MASON BROWN *versus* SAMUEL VEAZIE.

To make out a valid title to land sold to obtain payment of taxes assessed thereon, the purchaser under the collector's sale must show, that the provisions of law preparatory to and authorizing such sales, have been punctiliously complied with.

In determining the validity of a title under a collector's sale of land, on account of the non-payment of taxes thereon, the case must be governed by the law as it stood at the time of the assessment and sale.

Collectors have *no power to sell lands, by reason of the non-payment of* taxes thereon, except in pursuance of the provisions contained in the statutes; and can sell only in the precise cases in which it has been so authorized.

Property taxed to an individual, must be understood to be taxed to him by name, and not as to a person unknown.

A collector of taxes, before he can proceed to sell real estate taxed to persons unknown, must ascertain whether the owner lives out of the State or not; if he lives within the State, then the collector must, before proceeding to sell his land for the payment of taxes, give him two months previous notice in writing of his liability; or the sale will be unauthorized and void.

WRIT OF ENTRY. The case was opened for trial before TENNEY J. and testimony, as well as written evidence, was introduced by the respective parties; and thereupon the cause was taken from the jury by consent of parties; and such judgment, on nonsuit or default, it was agreed should be rendered, as upon such of the evidence introduced, and which is legally admissible, the whole being considered as objected to and ruled in, subject to objection, may seem to the Court to be in conformity to law.

The report of the evidence was quite extended; but the view taken of it by the Court shows with more readiness and equal clearness the application of the principles of law to the facts proved, than would a publication of the evidence in full.

*J. H. Hilliard* argued for the demandant, contending, that this property, being non-resident improved land, the owner or owners of which were unknown, was liable to taxation as such in the manner it was done. Stat. 1821, c. 116, § 30; Stat. 1823, c. 229. Where land is thus taxed, the collector is not

bound to inquire whether there is or is not an owner within the State. Nor is he the judge of the ownership.

The assessors and collector were legally chosen and sworn, and fully empowered to act in their respective capacities. 8 Greenl. 334; 13 Pick. 305; 2 Greenl. 218; 3 Fairf. 254; 7 Greenl. 120; 11 Mass. R. 477; Stat. 1821, c. 116, § 1; 10 Mass. R. 105.

The taxes were legally made and proper lists and warrants given to the collector, authorizing him to collect the same. The premises were sufficiently described. 5 Greenl. 492; 4 Mass. R. 191; 14 Mass. R. 145; 5 Metc. 15; 2 Greenl. 332; Stat. 1826, c. 337, § 2.

The collector complied with the requisitions of the law, in advertising and selling the property. Stat. 1821, c. 116, § 62; Stat. 1826, c. 337, § 8; 22 Maine R. 564; Stat. 1844, c. 123, § 16.

*Cutting*, for the defendant, among other objections to the validity of the collector's sale, under which the demandant claimed title, made the following : —

A sale of land for taxes, being an *exparte* proceeding, every substantial requisite of the law must be complied with, before the owner can be divested of his property ; and no presumption can be raised to cure any radical defect in the proceedings. 4 Peters, 359; 1 Greenl. 339; 13 Mass. R. 272; 15 Mass. R. 146; 1 Greenl. 308; 20 Pick. 421.

The Stat. 1831, is repealed by the Revised Statutes, so that in a trial involving the validity of any tax sale, the purchaser must establish his title by proof of the legality of the town in voting and raising the money, and assessing the taxes, &c. the same as prior to the passage of the act. The repealing act applied only to the remedy, and quantum of proof; and therefore the provisions in that act respecting vested rights does not reach this case. 2 Fairf. 288; 4 Wheat. 122, 209.

But if this is not the right view, still the act does not dispense with the necessity of proving that there was a legal collector and legal assessors. Various objections were here urged, and these citations were made. *Alvord* v. *Collins,* 20

Pick. 427; 2 N. H. R. 517; 5 N. H. R. 196; 6 N. H. R. 182; 7 N. H. R. 113; Stat. 1821, c. 116, § 1; 11 Mass. R. 447; 24 Pick. 124; 5 Mass. R. 427.

The law requires, that the assessors should commit the original assessment of the taxes to the collector, and first take a copy thereof, and file the same in the office of the town clerk, or in their own. Stat. 1821, c. 116, § 1; Stat. 1826, c. 337, § 2. It was urged, that this provision of the law was not complied with in two particulars. One, that there was a variation between the paper committed to the collector and the one kept; and another, that the copy was committed to the collector, and the original one retained.

The collector did not describe, in his advertisements, the land in the same manner, as it was described in the list committed to him, nor in such manner, as to show, that it was the same. The description would better, or at least, equally well, apply to a different lot.

The estate sold was improved real estate; and although non-resident, yet the owner lived within the State and but a few miles distant from the property. Before the collector in such case can proceed to advertise and sell the land to pay the taxes thereon, six months must first have elapsed, and after the expiration of the six months, two months notice in writing must have been given. Stat. 1821, c. 116, § 31. If the owner's name is not mentioned the collector must find him out, and give him the written notice, before he can sell. Here the taxes were committed to the collector on July 1, 1839, and the advertisements of the sale were dated December 26, 1839. This positive requirement of the law, therefore, was not complied with.

J. Appleton, for the plaintiff, replied.

The opinion of the Court was drawn up by

WHITMAN C. J. — It appears, that the tenant claims to hold the demanded premises as mortgagee under Joseph Smith, by deed bearing date, December 28, 1836. The tenant, being in possession, under a title apparently good, he cannot be disturbed, but by a claimant under a title paramount to his. The

demandant claims under a sale made for the non-payment of taxes, assessed on the premises, in the town of Orono, in June, 1839. His deed from the collector bears date, May 9, 1840. To substantiate his claim he introduced, at the trial, proof, supposed by him to be sufficient to show the legality of the assessment, and of the proceedings of the collector in making sale of the premises.

Sales of real estate, for the non-payment of taxes, must be regarded, in a great measure, as an *exparte* proceeding. The owner is to be deprived of his land thereby; and a series of acts, preliminary to the sale, are to be performed to authorize it on the part of the assessors and collector, to which his attention may never have been particularly called; and experience and observation render it notorious, that the amount paid by purchasers, at such sales, is uniformly trifling in comparison with the real value of the property sold. In this very instance the purchaser, at the collector's sale, bought, for less than $17, an estate, valued by the assessors at $900. It has, therefore, been held, with great propriety, that, to make out a valid title, under such sales, great strictness is to be required; and it must appear that the provisions of law preparatory to, and authorizing such sales, have been punctiliously complied with. The counsel for the defendant, in this case, may, therefore, be excusable, if not commendable, for the astuteness and searching manner in which he has scrutinized the doings of those officers, in the instance before us.

This case must be governed by the law as it stood at the time of the assessment and sale. By the act of 1821, c. 116, § 13, the assessors were required to file attested copies of their "assessments and valuations" in the town clerk's office or "in their own office, if any such they had." By § 1, of the same statute, they were to "have their assessments recorded in the town book," or "to leave an exact copy thereof, by them signed, with the town clerk; or file such copy in the assessors' office, when any such is kept, before the same is committed to an officer to collect; and, at the same time, "were to lodge, in the said clerk's office, the invoice or valua-

tion, or a copy thereof, from whence the rates of assessments were made ; that the inhabitants or others rated, may inspect the same." By the act of 1826, c. 337, § 1, it is enacted, that the assessors shall "make a record of their *assessments,* and of the invoice or valuation, from which such assessments shall have been made ; and, before the taxes are committed to the proper officer for collection, deposit the same, or a copy thereof, in the assessors' office, when any such is kept ; otherwise with the town clerk, with whom it shall remain for the purpose of affording to all persons interested, an opportunity for examining and correcting any error, that may have happened in the assessment of any tax."

By these enactments it appears, that there was, in the first place, to be a valuation of the estates, liable to be taxed ; and, then, an assessment of the moneys to be raised in conformity thereto. Both were to be recorded, or copies made of them, and lodged in the assessors' or town clerk's office, before the assessments were to be committed to the proper officer for collection ; instead of doing which the assessors, in this instance, according to the testimony, lodged neither a record or copy of their valuation and assessments in the office of the assessors, or of the town clerk ; but left the original document containing, as it would seem, both the valuation and assessment there ; and delivered a copy thereof to the collector, by virtue of which he supposed himself authorized to make the sale. In so doing neither the assessors nor collector conformed to the literal import of the law. This may not have been productive of any inconvenience to those interested in their doings ; but it was a departure from the line of duty, marked out for them to pursue, which may be regarded as, in strictness, affecting the authority of the collector to make sale of the premises. The assessment, which he should have had, should have been the original and not the copy. No record could, with propriety, be made of a copy ; and of course, none could be, or is pretended to have been made thereof ; and no copy of a copy could, in compliance with the law, be lodged with the assessors. Whether this irregularity should be considered as

fatal to the plaintiff's title or not, we do not now definitively decide ; but assessors and collectors will do well to notice, that it will be hazardous to suffer the like to occur in future.

It is urged by the counsel for the tenant, that there is a discrepancy between the description of the premises, as taxed, and as advertised for sale, such as should vitiate the proceedings of the collector ; and, also, that the description in either is too vague and uncertain to uphold the sale. The difference pointed out is this ; in the assessment the description is, " house, lot and stable, south of *R. & Kennedy's* block, being the Jos. Smith lot ;" and, in the advertisement, it is, " house, lot and stable, south of *R. Kennedy's* block, being the Jos. Smith lot." It behooves collectors, in advertising lands to be sold for taxes, to give such a description as will enable owners to know, that the lands advertised are theirs. It is not indispensable that the description should be precisely that, which is given in the tax bill. It should be such, however, that the identity will be manifest. It would seem that a more intelligible description might have been given in both instances. And in naming it as the Jos. Smith lot, when there was another lot, not more than one hundred rods south of R. & Kennedy's block, which, without a comma between the words, house and lot, would in the description, be precisely descriptive of that lot ; and one particular would render it more presumable to be the lot intended, viz., the fact that Jos. Smith last lived there, rendering it more proper to call it the Jos. Smith lot than the other. Although there is great force in the argument of the counsel for the tenant, on this point, yet we are inclined not to come to a decision in regard to it. We notice it rather to place assessors and collectors upon their guard in reference to such circumstances.

The counsel for the tenant lays much stress upon a defect in the manner in which, he argues, that the assessors and collector were sworn into office. If we saw no other difficulties in sustaining the plaintiff's title, and, were satisfied that there ought to be proof tending more directly to show that the proper oaths were taken, we might think it reasonable to send

the cause to a new trial, in order that the record, creating the difficulty, might be amended, if amendable, in the particulars that are essential ; or that, record evidence failing, there might be parol evidence introduced to show that the appropriate oaths were duly administered.

But there does seem to us, to be a difficulty, in the way of sustaining the plaintiff's title, which is insurmountable ; and upon that we prefer to place our decision of this cause. Collectors have no power to sell lands, by reason of the non-payment of taxes assessed thereon, except in pursuance of the provisions contained in the statutes ; and can sell only in the precise cases in which it has been so authorized. The statute, of 1821, c. 116, § 30, provides for a sale of real estate for the non-payment of taxes, no one having appeared to pay them, "of unimproved lands of non-resident proprietors ;" and of " improved lands of proprietors living out of the limits of this State ;" and, § 31, provides for the sale, for the non-payment of taxes, of improved lands of proprietors, living in the State, but not in the town in which such real estate lies, after first giving the proprietor notice in writing, two months prior to proceeding to sell ; and by the act, of 1823, c. 229, collectors may sell improved real estate, taxed to the owner thereof, for the non-payment of his tax, assessed thereon, whether he may be living in this State or elsewhere. These are all the cases in which a collector can make a valid sale of real estate, for the non-payment of taxes, assessed thereon.

Now, was the estate in question, in either of these predicaments ? It was not, in the first place, unimproved land ; for it is apparent, that it was a mere house lot, with a house and stable on it. Secondly, it was not improved land of a proprietor, living out of the State ; for the owner lived in Bangor, but ten or twelve miles from it ; thirdly, no notice in writing was given to the owner, two months before proceeding to make sale of the estate ; and, fourthly, the estate was not, as provided in the statute of 1823, taxed to the owner. It was taxed as belonging to persons unknown. The statute, of 1823, was passed to authorize the taxing of land possessed by a lessee,

either to him or to the owner thereof, unquestionably by name. It would not, in common parlance, be taxed to him unless he were named as the person taxed. Being so taxed he would be subject to other modes of enforcing payment, as by arrest, distraint or suit. A tax to persons unknown does not subject the owner to any compulsory process, except by the sale of his land. Property taxed to an individual, therefore, must be understood to be to him by name, and not as to a person unknown.

It seems to us to be very clear, that a collector, before he can proceed to sell real estate, taxed to persons unknown, must ascertain whether the estate be improved or not. If improved, he must ascertain whether the owner lives out of the State or not. If he lives in the State, then, the collector must, before proceeding to sell his land for taxes, give him two months previous notice in writing of his liability. In this case the estate being taxed to owners unknown, and being under improvement, and no such notice having been given, the sale was unauthorized and void.

*Plaintiff nonsuit.*