NELSON SAVAGE *vs.* CALEB HOLYOKE and others.

*Trespass quare clausum—what title will enable plaintiff to sustain. Tax title.*

As the law in this State was in 1835, in order to sustain a title under the tax-deed from a county treasurer, it must affirmatively appear that the provisions of law preparatory to and authorizing a sale of land for taxes had been strictly complied with.

To sustain an action of *trespass quare clausum* against one having no right to be upon the premises, the plaintiff put in evidence a deed of quitclaim to himself from one who never had either title or possession. The deed was never recorded until after the trespass complained of, and it did not appear that the plaintiff ever had possession under it. *Held,* insufficient.

In Nov., 1845, neither the common law nor the statutes of this State authorized a married woman to take a conveyance of real estate, and give back a mortgage to secure the purchase-money ; but such a mortgage and deed were void.

A certified copy of a certificate of the entry by the mortgagee of such a mortgage, on June 4, 1847, for the purpose of foreclosing it, in the absence of any evidence that such possession was continued, would not be sufficient evidence of possession to enable him to maintain trespass for acts happening twenty years thereafter.

DICKERSON, J. TRESPASS QUARE CLAUSUM. Plea, general issue, with a brief statement, denying title and possession in the plaintiff, and setting forth title and possession in the defendants.

The gist of this action is the disturbance of the plaintiff's possession, and if this fact does not appear, it cannot be maintained. It is not, however, indispensable to the maintenance of this action, that the title to the premises should be in the plaintiff. Actual possession without title, or constructive possession with, is sufficient to support the action against one who has no right to be upon the property. As against a wrong-doer it is sufficient, if the possession is for a less term than twenty years. *Moore* v. *Moore,* 21 Me. 354 ; *Chandler* v. *Walker,* 1 Fost. 286 ; 1 Chit. Pl. 196 and 199.

The trespasses complained of are alleged to have been committed in the years 1867, 1868, and 1869, upon certain lands of the plaintiff, situated in township No. 9, in the ninth range of lots, formerly the town of Wilson in the county of Piscataquis.

The " Chadwick " lots where the principal trespasses are alleged to have been committed, were the north half of lot No. 6, and the south half of lot No. 7, in the seventh range, and the north half of lot No. 6, and the south half of lot No. 7, in the eighth range. The *locus* of the other trespass, is the south half of lot No. 5, in the eighth range.

1. The plaintiff's title. To establish his title, generally, to the " Chadwick " lots, the plaintiff relies upon what purports to be the tax-deed of Joseph Philbrick, treasurer of the county of Somerset, of township No. 9, in the ninth range of townships, in said county, dated, Dec. 10, 1835, and recorded Dec. 14, 1835. No evidence was offered to show that Philbrick was treasurer when the deed was given, or that the emergency had arisen for the assessment of the tax, or that the tax was legally assessed, or that the warrant for its collection had been duly issued to the treasurer, or that the requirements of law had been complied with in respect to advertising and selling the land, making the proper returns, and recording the proceedings.

Great strictness is required to make out a title under a tax-deed, and it must appear, as the law stood, when this tax was assessed, that the provisions of law preparatory to, and authorizing such sales, have been strictly complied with. The case, as presented by the plaintiff under the Philbrick deed, does not furnish *prima facie* evidence of title in him. *Brown* v. *Veazie*, 25 Me. 362 ; 2 Washb. Real. Prop. 522.

In further support of his title to the two " Chadwick " lots, described in his writ, as the north half of lot No. 6, and the south half of lot No. 7, in the eighth range, the plaintiff introduces the quitclaim deed of David Spratt, jr., to him, dated July 7, 1845, and recorded Feb. 15, 1870. It does not appear that Spratt ever had any possession or deed of the premises released. The deed, moreover, was not recorded until after the trespasses complained of are alleged and have been committed ; nor is there any evidence that the plaintiff took possession under this deed. This deed must, therefore, be regarded as the mere unrecorded release of a party

having neither title nor possession. As such, it is insufficient, upon the principles before stated, to enable the plaintiff to maintain an action of *trespass quare clausum*, against one who has no right to be upon the premises. *Estes* v. *Cook*, 22 Pick. 296. *Tebbetts* v. *Estes*, 52 Maine, 566.

The mortgage deed of Rufus G. Curtis and Sally Ann Curtis, his wife, dated Nov. 4, 1845, and recorded Jan. 30, 1846, and the certified copy of a certificate of the plaintiff's entry to foreclose the same for conditions broken, dated June 4, 1857, are relied upon to show the title of the plaintiff to the south half of lot No. 5, in the eighth range. It appears by a deed introduced by the defendants, that the plaintiff conveyed the same parcel of land to the said Sally Ann Curtis, on the same day the mortgage was given to him. The mortgage was undoubtedly given to secure the payment of the purchase-money. The deed and mortgage constitute one and the same transaction, and must stand or fall together. When these deeds were given (1845), neither the common law nor the statutes of this State authorized a married woman to take a conveyance of real estate and give back a mortgage to secure the purchase-money. The mortgage given for such purpose, and the deed, together with the notes, were void. *Newbegin* v. *Langley*, 39 Maine, 200. •

It follows that the plaintiff acquired no title to the south half of lot No. 5, in the eighth range, under the Curtis mortgage, and he has introduced no other record evidence of title thereto, except the Philbrick deed, which, as has been seen, cannot avail him. Besides, if the mortgage had been free from any infirmity and had been foreclosed by the plaintiff, he acquired no better title to the land by this transaction than he had when he gave the deed, which was no title at all. It follows that the plaintiff has failed to make out a valid title, by deed, to this parcel of land, and, also, to any of the other parcels described in his writ.

2. The plaintiff's possession. The only evidence of the plaintiff's possession of the south half of lot No. 5, range eight, is a certified copy of the certificate of his entry therein, dated June 4, 1847, to foreclose the Curtis mortgage, which was twenty years

before the trespass is alleged to have been committed upon it. There is no evidence that his possession continued for a single day after that entry, and, as he had no title, it is obvious that that single act would not be a sufficient possession to enable him to maintain this action.

The evidence to show the plaintiff's possession of the "Chadwick" lots, previous to the commission of the alleged trespass thereon, is derived exclusively from himself. He testifies that he moved on to lot No. 3, range eight, in 1825, and built his house in 1826, which was nearly three miles from the "Chadwick" lots. He further testifies that he come into possession of the "Chadwick" lots in 1835; by what authority, for what purpose, or in what manner he does not say. As his home-lot was three miles from these lots, it is hardly probable that he would visit them very frequently. Indeed, he does not testify that he was ever personally present on either of these lots, though he does speak of "letting" two persons cut and haul timber from them, and three other persons use them as a pasture. Upon what terms and conditions, or during what years he "let" those persons do these things does not appear. This is the extent of the plaintiff's possession, if such it may be termed, according to his own testimony. No other witness corroborates him.

Uncertain and transient as the plaintiff's possession of these lots seems to have been, if any he had, it did not continue more than thirteen years, as he "came into possession" of them in 1835, and moved out of the township in 1848. Though he returned to his home place after an absence of several years, there is no evidence that he was in possession of the "Chadwick" lots after his return. He acquired no title, therefore, to these lots by possession, and whatever possession he had of them, if any, was relinquished and abandoned at least nineteen years before the trespasses thereon are alleged to have been committed. He had neither title with actual or constructive possession, nor actual possession without title, and is a stranger to both the title and possession of the lots in question. The defendants did not disturb his possession, and he is not in a

situation to require them to show their right to be upon the premises. *Plaintiff nonsuit, and judgment for the defendants.*

KENT, WALTON, DANFORTH, and TAPLEY, JJ., concurred.

*Plaisted & Clark,* for the plaintiff.

*Hudson & Merrill,* for the defendants.