# THE STATE ex rel. BURNS, Prosecuting Attorney, Appellant, v. GIBSON.

### In Banc, March 30, 1906.

1. **TOWNSHIP ORGANIZATION: Statute.** The Constitution (art. 9, sec. 8) says that "the General Assembly may provide, by general law, for township organization, under which any county may organize whenever a majority of the legal voters of such county, voting at any general election, shall so determine." *Held*, that section 8427, Revised Statutes 1889, which provides that "if it shall appear by the returns of said election that a majority of the legal voters of the county, voting at said election for and against township organization, are for such organization, then the county so voting shall be governed by" the provisions of the township organization law, is unconstitutional and void, in that it permitted a majority of those voting on the proposition to adopt township organization, while the Constitution required a majority of the legal voters voting at the general election.

2. ———: ———: **Constitutional Provision: Self-Enforcing: Majority of Voters.** Nor is said constitutional provision self-enforcing for it says that "the General Assembly may provide, by general law, for township organization," etc. Thus, the provision was addressed to the General Assembly, and not to the courts, and in such case a constitutional provision is not self-executing; and, hence, it was immaterial whether a majority of all the votes cast, or a majority simply of those voting on the proposition, were cast for township organization, for no statute in harmony with the Constitution was enacted.

3. **CONSTITUTIONAL PROVISION: Self-Enforcing: Test.** The test of whether or not a constitutional provision is self-enforcing is whether its language is addressed to the General Assembly or to the courts. If its language indicates that it was intended as a present enactment, complete in itself as definite legislation, it is addressed to the courts and is self-enforcing; but if it contemplates subsequent legislation to carry it into effect, it is addressed to the General Assembly, and is not self-enforcing.

4. ———: ———: **Township Organization: Legislative Interpretation.** The view that section 8427, Revised Statutes 1889, was not self-enforcing finds support in the fact that in 1897 the General Assembly amended that section to comply with the

Constitution, that is, to require a majority of the votes cast at the general election to be necessary to the adoption of township organization and by the further fact that in 1901 the General Assembly authorized the submission to the people of an amendment to the Constitution by which a majority of the voters voting on the proposition could adopt township organization.

Appeal from Linn Circuit Court.—*Hon. John P. Butler*, Judge.

REVERSED AND REMANDED (*with directions*).

*T. M. Bresnehen* and *H. K. & H. J. West* for appellant.

(1) Section 8427, Revised Statutes 1889, is unconstitutional for the reason that it is in conflict with section 8 of article 9 of the Constitution. State ex rel. v. Basford, 67 Mo. 331; Webb v. Lafayette County, 67 Mo. 353; Hayes v. Dowis, 75 Mo. 250; State ex rel. v. Francis, 95 Mo. 44; State ex rel. v. Mayor of St. Louis, 73 Mo. 435; State ex rel. v. Harris, 96 Mo. 29; State ex rel. v. Sutterfield, 54 Mo. 391; State v. Winkelmeier, 35 Mo. 103; State ex rel. v. McGowan, 138 Mo. 187. (2) This provision of the Constitution is not self-enforcing. State v. Kyle, 166 Mo. 287.

*O. F. Libby, C. C. Bigger* and *A. W. Mullins* for respondent.

Under a section of the Constitution the Legislature at the session of 1879 (Laws 1879, p. 218) passed a general law providing for township organization in such counties as should adopt the same. This law was included in the Revised Statutes of Missouri of 1879, being chapter 162 thereof, and has been carried forward and incorporated into the subsequent revisions of the general statutes. R. S. 1889, chap. 162; R. S. 1899, chap. 168. The present township organization law is

substantially a re-enactment of the law of 1872 on that subject. The constitutionality of that act was submitted by a resolution of the House of Representatives of the Twenty-seventh General Assembly to the judges of the Supreme Court for their opinion thereon. The judges answered that the law was constitutional and valid. Opinion of Supreme Court Judges on Township Organization Law, 55 Mo. 295. And in the case of Lammert v. Lidwell, 62 Mo. 191, this court so held. The contention on the part of the appellant, relator in this case, is that the words "for and against township organization," occurring in section 7432, Revised Statutes 1879, and in section 8427, Revised Statutes 1889, are not in harmony with section 8 of article 9 of the Constitution, but are repugnant thereto, and that therefore the said section of the township organization law is unconstitutional and void, and that said law has never been adopted or in force in Linn county and could not be adopted and become operative, no matter how many votes may have been cast in favor of the adoption of the law. The section of the Constitution authorizing the government of counties under the township organization law requires two essential things to be done before such county government can be established and put in force: (1) that the General Assembly pass a general law providing for township organization; and (2) that a majority of the legal voters of the county, voting at a general election, shall vote therefor. The Legislature enacted the township organization law and the legal voters of the county at a general election by a vote largely in excess of the constitutional majority voted for the adoption of the law. As we understand the position of the attorneys for relator, this is not questioned. Therefore, a majority, and more, of all the legal voters of the county voting at the general election having voted to adopt the law, such vote fulfilled the requirement of the Constitution in that regard, and the law was thereby adopted and became operative

in said county. State ex rel. v. McGowan, 138 Mo. 187. Section 8 of article 9 of the Constitution, after providing that the Legislature might enact a township organization law, then specified in unequivocal terms the vote required to adopt the law and make it operative in the county. The clause in that section, as to the vote and majority necessary to adopt the law, needed no legislative aid to give it effect, and is self-enforcing. Arnold v. Hawkins, 95 Mo. 572; Building Co. v. St. Joseph, 108 Mo. 308; Hickman v. Kansas City, 120 Mo. 116. Strike out the words "for and against township organization" from the section of the statute in question, and the law is still complete, and in such case the constitutional objection is unavailing. Cooley's Const. Lim. (5 Ed.), 211-212; State ex rel. v. Field, 119 Mo. 612; State v. Bockstruck, 136 Mo. 353; Grimes v. Eddy, 126 Mo. 185; State ex inf. v. Washburn, 167 Mo. 697.

BURGESS, J.—This is a proceeding in the nature of quo warranto, begun in the circuit court of Linn county by Thomas P. Burns, the prosecuting attorney of said county, against the respondent, M. L. Gibson, the purpose of which is to oust him from the office of township clerk and ex-officio assessor of Locust Creek township in said county, which, it is charged in the petition, he has since the first day of May, 1899, unlawfully usurped, held, used and exercised, when in truth and in fact there was, and is now, no such office as township clerk and ex-officio assessor of Locust Creek township in said county.

Respondent made return to the alternative writ issued on said petition, as follows:

"Now at this day comes the defendant, M. L. Gibson, and for his answer to the information filed herein by Thomas P. Burns, prosecuting attorney of Linn county, Missouri, and for his return to the writ issued by said court on said information, states: That heretofore, to-wit, on the 7th day of July, 1880, the county

court of said Linn county submitted to the qualified voters of said Linn county at the general election to be held in said Linn county on Tuesday, the second day of November, 1880, the question as to the adoption of the township organization law in and for said county; and that at said general election held on the day last aforesaid the qualified voters of said Linn county duly adopted said township organization law, at which election there were cast for the adoption of said township organization law, two thousand nine hundred and sixty votes, and against the adoption of said law, six hundred and eighty-eight votes, and that by reason of the adoption of said township organization law the same became operative and in effect within and for said Linn county on and after the first day of April, 1881, as provided by law; and that on the said first Tuesday of April, 1881, an election for township officers was duly held in the various townships in said Linn county, and the persons elected to the township offices at said election duly qualified and discharged their respective duties for and during the term for which they were elected. That ever since said township organization law was adopted and the first township officers were elected under and in pursuance of it, said Linn county has been governed by said law and still is governed by the same.

"That Locust Creek township, mentioned in said information and writ, is one of the municipal townships in said county, and that at the township election held within and for said township, held on the last Tuesday in March, 1899, the day appointed by law therefor, the said defendant, M. L. Gibson, was duly elected to the office of township clerk and ex-officio township assessor in and for said Locust Creek township, for the term of two years next thereafter; that said defendant duly qualified as such officer and entered upon the discharge of his duties thereof, and since his said election and qualification he has held such office and discharged the duties thereof, and still holds the same. That when he

was so elected he was a male citizen and resident of said township and a legal and qualified voter therein, and in all respects qualified to hold said office and discharge the duties thereof.

"Defendant further answering denies each and every allegation and statement in said information contained and every recital thereof in said writ not hereinbefore specifically admitted to be true."

A reply was filed denying all allegations in the return. The trial resulted in the dismissal of the proceedings and judgment accordingly. Relator appeals.

The facts briefly stated are substantially as follows:

On July 7, 1880, the county court of Linn county, on the petition of one hundred, and more, legal voters of said county, made and entered of record an order submitting to the qualified voters of said county, at the general election to be held in said county on the first Tuesday in November, 1880, the question of township organization, as provided by law. And that at said general election the whole number of votes cast in said Linn county was 4,227, and on the question of township organization there were for township organization 2,960 votes, and against township organization 688 votes. There was, therefore, of all the votes cast in the county at said election, a majority of 1,267 in favor of the adoption of the township organization law. That on the first Tuesday in April, 1881, an election for township officers was duly held in the various townships of said Linn county, and the persons elected to the township offices at said election qualified and discharged their respective duties for the term for which they were elected. That since said first township election said Linn county has been governed by the township organization law and is still governed by said law.

It was further shown in evidence that at the August term, 1890, being on August 4, 1890, B. B. Putman and more than one hundred other legal voters of

said Linn county filed their petition in said court asking the court "to resubmit the question of township organization, now in force in said Linn county, to the voters of Linn county, at the next general election to be holden in said county, in accordance with the statutes in such cases made and provided." And that by an order of record made by said county court on September 1, 1890, on said petition, the question of township organization was resubmitted to the qualified voters of said Linn county to be voted on at the general election in said county to be held the first Tuesday in November, 1890. That at said general election in said Linn county the whole number of votes cast was 5,213; and that on the proposition of township organization, submitted by order of the county court and voted on by the qualified voters of said county at said election there were 3,335 votes cast for township organization and 594 votes against township organization, thus showing a majority of 1878 in favor of township organization of all the votes cast at said election.

That at the township election held within and for said Locust Creek township on the last Tuesday of March, 1899, the day appointed by law therefor, the said defendant, M. L. Gibson, was duly elected to the office of township clerk and ex-officio assessor of said township, for the term of two years next thereafter, and duly qualified as such officer and was holding said office and discharging the duties thereof when this proceeding was instituted (but said term expired at the following March election and qualification of his successor). That defendant when elected to said office and while discharging the duties thereof was a legal voter and resident in said township and in all respects qualified to discharge the duties thereof.

No evidence was offered by relator.

It is claimed by the relator that section 8427, Revised Statutes 1889, is unconstitutional and void for the

reason that it is in conflict with section 8 of article 9 of the Constitution. By that section of the statute it is provided that: "If it shall appear by the returns of said election that a majority of the legal voters of the county, voting at said election for and against township organization, are for such organization, then the county so voting in favor of its adoption shall be governed by and subject to the provisions of this chapter, on and after the last Tuesday in March next succeeding."

Section 8 of article 9 of the Constitution provides that:

"The General Assembly may provide, by general law, for township organization, under which any county may organize whenever a majority of the legal voters of such county, voting at any general election, shall so determine; and whenever any county shall adopt township organization, so much of this Constitution as provides for the management of county affairs, and the assessment and collection of the revenue by county officers, in conflict with such general law for township organization, may be dispensed with, and the business of said county, and the local concerns of the several townships therein, may be transacted in such manner as may be prescribed by law: *Provided,* That the justices of the county court shall not exceed three in number."

It will be observed that the Constitution authorizes the Legislature to provide for the adoption of the township organization law by the vote of a majority of the legal voters of the respective counties *voting at any general election,* while the statute quoted provides for the adoption of such law by the vote of a *majority of those voting* at the election, on the question of the adoption of the law. It is clear from the provisions of the statute that, however small the number of votes cast at any general election upon a proposition authorizing the adoption of the township organization law, so that a majority of the legal votes cast on that prop-

osition be in favor of its adoption, that is all that is necessary for its adoption. It is not so, however, under the Constitution, which in order to the adoption of such a proposition, requires that a majority of all the votes *cast* at such election be in favor of its adoption.

Under the Constitution, if five thousand legal votes or more be cast at such election regardless of the purpose for which they may be cast, in order to the adoption of township organization in the county, a majority of *all* the legal votes cast is required, while under the statute a bare majority of the legal vote cast on the question of the authorization of the adoption of township organization is all that is necessary, although the vote be simply nominal, so that, a majority of the vote be in favor of the measure. It is, therefore, manifest that the statute is not in harmony with the Constitution, but is in conflict with it.

It is true that the record discloses that at the general election held in November, 1890, at which time the question of adoption of township organization was again submitted to the legal voters of Linn county, the largest vote cast was five thousand two hundred and thirteen, and upon the question of the adoption of township organization three thousand three hundred and thirty-five in favor of its adoption, and five hundred and ninety-four against it, so that, whether the proposition was submitted under the Constitution or under the statute there was a majority in favor of the adoption of the law.

It was held in the case of State ex rel. Litson v. McGowan, 138 Mo. 187, that under the Constitution of this State requiring a majority of the legal voters, "voting at any general election," to adopt township organization in a county, a majority of those voting on such a proposition was not sufficient. But it is clearly intimated in that case that, if there had been a majority of all the votes cast at the election on any issue then submitted in favor of the proposition, as required by

the Constitution, the proposition would have been carried. This position is based, of course, upon the theory that the section of the Constitution in question was self-enforcing and needed no legislation to put it in operation. This we understand to be the contention of resspondent.

The test in such cases is, Can the Constitution be enforced without the aid of legislation? "The question in every case is whether the language of a constitutional provision is addressed to the courts or the Legislature. Does it indicate that it was intended as a present enactment, complete in itself as definitive legislation, or does it contemplate subsequent legislation to carry it into effect? This is to be determined from a consideration both of the language used and of the intrinsic nature of the provision itself. If the nature and extent of the right conferred and of the liability imposed are fixed by the provision itself, so that they can be determined by the examination and construction of its own terms, and there is no language used indicating that the subject is referred to the Legislature for action, then the provision should be construed as self-executing, and its language as addressed to the courts." [Willis v. Mabon, 48 Minn. l. c. 150.]

That this provision was addressed to the Legislature and not to the courts is, we think, too plain for argument. It starts out by saying: "The General Assembly may provide, by general law, for township organization, whenever a majority of the legal voters of such county, voting at any general election, shall so determine," thus clearly indicating that it was not intended for a present enactment complete in itself, but that legislation would be required to make it operative. It makes no provision whatever for holding the election, who shall be qualified to vote at it, or the form of the ballot. It would be difficult to indicate by stronger language than that quoted, that the framers of the Constitution intended that there should be legislation in

order to put the provision in force, otherwise than by express words to that effect.

What we have said finds support in the fact that the Legislature, in 1897, amended section 8427, supra, so as to make it conform to the Constitution, that is, so as to require a majority of all the legal votes cast in any county at any election at which the question of the adoption of township organization is submitted, necessary to its adoption. And, at the general election held in November, 1902, said section 8, article 9, of the Constitution was amended by a vote of the people so as to provide that whenever a *majority* of the legal voters of a county voting upon the proposition of the adoption of township organization should vote for its adoption, it should be adopted in any county so voting.

In conformity with this amendment to the Constitution, the Legislature in 1903 (Laws 1903, p. 271), amended section 10228 of article 1, chapter 168, Revised Statutes 1899 (section 8427, Revised Statutes 1889, Laws 1897, p. 234), by providing that if it shall appear by the returns of a general election that a majority of the legal voters of the county voting upon a proposition to adopt township organization at said election are for organization, then the county so voting in favor of its adoption shall be governed by the township organization law. The efforts upon the part of the voters amending the Constitution and of the General Assemblies to harmonize the Constitution and the statutes with respect to the requisite number of legal voters in each county necessary to the adoption of such law, are very persuasive at least, if not conclusive, that they were of the opinion that the statute (sec. 8427, supra), was in conflict with the Constitution as it then was, and therefore null and void, and to avoid such apparent conflict the Constitution and statutes were amended as before indicated.

For these intimations the judgment is reversed and the cause remanded with directions to the court below

to order the issuance of the writ as prayed for by the relator.

All concur, except *Gantt, J.,* who dissents; *Lamm, J.,* not sitting.