THE STATE ex rel. ALBERT HOWARD, Collector, v. ESTATE OF HENRY TIMBROOK; I. M. TIMBROOK and G. W. TIMBROOK, Executors, Appellants.

**Division Two, February 27, 1912.**

1. **TAX BOOK: Failure to Verify by Affidavit.** The county assessor's tax book was not verified by affidavit under Sec. 11392, R. S. 1909. The book contained an assessment of personal taxes against the Timbrook estate. · The board of equalization ignored that assessment and assessed the personal property of the estate as "omitted property," and the defendant executors appeared before the board and obtained deductions. *Held,* that the failure to verify the tax book by affidavit does not render invalid the tax assessed by the board against the Timbrook estate. The provision for an affidavit is directory.

2. **COUNTY BOARD OF EQUALIZATION: Changing Valuation on Assessor's Book: Adding or Dropping Property.** The county board of equalization has power to raise or lower the valuation of all the property on the assessor's book on a percentage basis. The board can add to the book omitted property, and drop from it property placed thereon by the assessor.

3. **ASSESSMENT OF TAXES: Property-Owner Since Death.** A complaint that the assessment was made against "H. Timbrook" after he was dead, is answered by calling attention to the fact that the property was assessed as of date June 1, 1905, at which time Henry Timbrook was living.

State ex rel. v. Timbrook, Exrs.

4. ————: **Statutes Governing.** The assessment for the year 1905 was properly made under Sec. 11401, R. S. 1909; and Sec. 11403 gave the board of equalization power to equalize that assessment in the same way as in other cases.

Appeal from Caldwell Circuit Court.—*Hon. Francis H. Trimble,* Judge.

AFFIRMED.

*Oscar L. Smith* for appellants.

(1) The supplemental tax book and the assessor's book after the corrections, adjustments and additions to the assessor's book were made by the board, fixed the liability against "H. Timbrook" almost two years after his death and while the estate was in the hands of the executors. State ex rel. v. Kendrick, 159 Mo. 631; R. S. 1909, sec. 11348; Searing v. Heavysides, 106 Ill. 85. (2) The assessor's book made by Gomer G. Jones was void because it was not signed or certified by him as required by statute. The court erred in refusing declaration of law No. 2. R. S. 1909, sec. 11392; State ex rel. v. Schooley, 84 Mo. 447; State ex rel. v. Seahorn, 139 Mo. 582. (3) The assessor's book was void as to the assessment of the Henry Timbrook estate, because it was based on the assessment list given in by Tabitha Timbrook, while the estate was in the hands of the executors. The court erred in refusing declaration of law No. 1. R. S. 1909, secs. 11348 and 11355; Searing v. Heavysides, 106 Ill. 85. (4) The assessment of Henry Timbrook in 1906 of his personal property owned by him June 1, 1905, was void for the reason that there is no authority of law for assessing personal property for back years. Hannibal ex rel. v. Bowman, 98 Mo. App. 107; Welty on Assessments, p. 36; Cooley on Taxation (2 Ed.), p. 42, note 3; Hamilton v. Amsden, 88 Ind. 304; Cape Girardeau v. Buehrman, 148 Mo. 198. (5) The assessment of "Henry Timbrook" by the assessor long after his

death did not fix a liability against his executors or his estate. The assessment is the very inception of taxation; and the act of the assessor in assessing personal property fixes the charge only against the person named by the assessor. R. S. 1909, secs. 11487, 11348, 11355, and 11351; State ex rel. v. Burr, 143 Mo. 209; State ex rel. v. Thompson, 149 Mo. 441. (6) If the board of equalization was attempting to make an original assessment under the provisions of Sec. 11407, R. S. 1909, its acts were void because it did not come within it. The board had no authority to add to the assessor's book the same items that were already on the book. Such items had been "omitted." Section 11354, R. S. 1909, is the only provision, under which the board could act, where the assessor's book contained the assessment. As the board undertook to come within the section by adding "omitted" property, it was bound to give notice to the "owner." The property may have had a number of owners first and last. Then which "owner?" Evidently the "owner" on June 1, 1905, who was on that day liable for the taxes. Henry Timbrook having been dead almost two years, the action of the board was void. The executors were, at most, only trustees, and were not empowered to fix, authorize or consent to a liability. R. S. 1909, sec. 11407; Hannibal ex rel. v. Bowman, 98 Mo. App. 107; State ex rel. v. Bank, 180 Mo. 717; State ex rel. v. Kendrick, 159 Mo. 631; Cape Girardeau v. Buehrman, 148 Mo. 198; Cooley on Taxation (2 Ed.), pp. 287, 365; Appeal of Powers, 29 Mich. 504; State ex rel. v. Railroad, 114 Mo. 1; State ex rel. v. Edwards, 136 Mo. 360.

*D. E. Adams* and *Wm. Fitch* for respondent.

(1) Omission of property from assessment may occur either by never having been placed on the list or book, or by being listed, but under such circumstances as to render it not a valid assessment. In

·either case  the legal effect is the same.  It is not the basis of a tax levy that can be enforced; it is ''omitted property.''  Such is the status of the property in question in this suit.  The list for $4150 given by Henry Timbrook to the township assessor in 1905 was void because Caldwell county was not legally operating under the township organization law, under the decision in the Gibson case.  This theory was conceded by all parties to this suit, and the case was tried on that theory.  The list given to the assessor by Tabitha Timbrook and signed by her was void and furnished no basis for assessment, because she had no authority to furnish a list; the property was in the hands of the executors.  This is likewise conceded to be the status of that proceeding.  Such being the condition of the property, it was not changed by the fact that Jones, the assessor, entered it on his book.  Its legal status was still ''omitted property'' when the county board of equalization proceeded to assess it under the provisions of the laws of 1903, page 253 (now Sec. 11407, R. S. 1909).  (2) The power of the county board of equalization to assess ''property omitted'' from the books then under examination, under the Laws of 1903, page 253, is no longer a question.  It has been sustained in the following cases:  State ex rel. v. Harrison, 226 Mo. 158;  Ex pate Sanford, 139 S. W. 376; State ex rel. v. Timbrook, 145 Mo. App. 368; Western Tie & T. Co. v. Pulliam, 237 Mo. 1. (3) Appellant contends that the Jones assessment book, being void because not certified, is not a basis of action by the county board of equalization, and the only legal act they could do was to adjourn.  The legal consequences of this status would have been that they were not entitled to pay for their services, because there was nothing they could do.  We answer this contention by saying that the evident intention of the Act of 1903, page 253, was to meet just such cases as is presented in this record.  When the board found

that property had been omitted from assessment from whatever cause, it was the clear duty of the board to see that such property did not escape its just portion of the taxes by an oversight or technical error of any one, or the willful failure or neglect of someone to perform his duty. It was the duty of the executors of this estate to give a list of the estate property to the assessor under the provision of Section 9151, as amended, Act 1903, page 256; but having failed to do so, would take advantage of their own neglect.

ROY, C.—This is a suit for personal taxes for the year 1906 based on the assessment for 1905 of the personalty of Henry Timbrook, who died September 1, 1905. The suit was begun in the probate court of Caldwell county, by the mere filing of the taxbill. After a judgment for plaintiff, defendants appealed to the circuit court, where, at the June term, 1908, judgment again went against them, and they have appealed to this court.

In March, 1906, in the case of Burns v. Gibson, 195 Mo. 251, this court held that township organization in Linn county was illegal because of the unconstitutionality of the township organization law. Caldwell county had, up to that time, been operating under township organization under the same law. Every one after that conceded that the assessments made prior to that time in Caldwell county were void. The result was deplorable so far as its immediate effects were concerned, as it left the fiscal affairs of the county for the time being in a chaotic condition. Township organization was by common consent abandoned, and the Governor appointed R. W. Napier as collector and Gomer C. Jones assessor.

On June 14, 1905, Henry Timbrook signed, swore to and delivered his assessment list to the township assessor, showing $4150 assessed valuation. On the death of Henry Timbrook, his two sons, I. M. and G. W.

Timbrook, took charge of his estate as his executors.

After his appointment, the assessor made an assessment of the property in the county subject to taxation on June 1, 1905, and as a part of that assessment he received from Tabitha Timbrook, widow of the deceased, an assessment list, signed and sworn to by her, in which she returned as the property of Henry Timbrook the amount of $64,500 personal property; and that amount was entered in the assessor's book as the property of H. Timbrook owned June 1, 1905.

That book was not verified by affidavit under section 11392, Revised Statutes 1909.

The board of equalization on April 2, 1907, on the theory that the assessment of H. Timbrook as shown on that book being based on the list made by Tabitha Timbrook was void, made the following entry of their proceedings in regard thereto:

"In the matter of the assessment of the estate of Henry Timbrook, deceased: It appearing to the board of equalization that personal property belonging to the estate of Henry Timbrook, deceased, has been omitted from the assessor's book, now under examination by this board, for the year 1905 for taxes of 1906; it is therefore ordered by the board that the estate of Henry Timbrook, deceased, be added to said assessment book with personal property in the city of Braymer and Braymer school district and valuation as follows:

"Money on hand .................. $    100.00
"Aggregate of solvent notes, secured
    by mortgages ................. 64,350.00
"Household and kitchen furniture ... 50.00
                                    _____
                    "Total personal  $64,500.00

"The above property shown on the records of said estate in the Probate Court of Caldwell County, Missouri."

And on April 22 the board made the following entry of its proceedings:

"In the matter of the assessment of the Henry Timbrook estate: Now this 22nd day of April, 1907, the county board of equalization being in session, pursuant to adjournment on the 3rd day of April, 1907, the matter of the order heretofore made on the 2nd day of April, 1907, assessing the personal estate of Henry Timbrook, deceased, for the year 1905, for the taxes for the year 1906 and adding said assessment to the assessment book for that year, being taken up by the board, it appears to the board from the return of the sheriff of this county that a certified copy of the said order making said assessment, together with a notice that this board of equalization would meet on the 22nd day of April, 1907, to hear appeals from such orders, was served upon M. F. Timbrook, one of the executors of said Henry Timbrook estate, on the 12th day of April, 1907, and now appear before this board M. F. Timbrook and George W. Timbrook, executors of said estate, and make claim that notes in their hands as such executors executed by Flora and F. L. Blacketer, in the aggregate, including interest, $1,528.49; and that notes executed by D. Thait in the sum of $1100 were not in fact assets of said estate; and that notes including interest, in their hands as follows, to-wit: George Otto, $619.73, H. A. Timbrook, $550, John Pennington in the sum of $720 and Henry Bushnell in the sum of $3,384.74 were wholly insolvent and uncollectible. The board thereupon takes the matter under advisement until tomorrow."

And on April 23, the following entry of its proceedings: "The board of equalization being in session pursuant to adjournment on April 22, 1907, in relation to the matter of the assessment of the estate of Henry Timbrook, deceased, the board having duly considered the claim made by the executors thereof doth make the following holding and order, to-wit:

That the assessment heretofore made herein be reduced by the following items and amounts, to-wit:

"Notes of Flora and F. L. Blacketer . .$ 1,528.39
"Notes of D. Thait ................... 1,100.00
"Notes of H. A. Timbrook ............ 550.00
"Notes of John Pennington .......... 720.00

$ 3,898.39

"So that said assessment against said estate will stand as follows:

"Money on hand ....................$  100.00
"Aggregate of solvent notes .......... 60,451.61
"Household and kitchen furniture .... 50.00

"Total ....................$60,601.61

"That said assessment be placed on the assessment book for 1905 for taxes of 1906 and on the supplemental tax book for taxes of 1906 and that the clerk of the county court extend the taxes on the same as provided by law."

At the March term, 1907, the county court made the following entry on its records:

"Now at this time comes R. W. Napier, county collector of Caldwell county, who files his lists of unpaid real estate and personal taxes, which said lists were examined, corrected and approved by the court and ordered placed in a supplemental tax book and delivered to Frank L. Bowman, county collector, who shall proceed to collect said taxes as rapidly as possible."

The supplemental tax book was delivered to the collector for collection March 20, 1907.

The cause was tried without a jury. The defendants asked the following instructions, which were refused:

Number 1 was a declaration in effect that the list made by Tabitha Timbrook was void and that plaintiffs could not recover.

Number 2 declared that the assessor's book for 1905, not being sworn to, was void and the tax based thereon was void.

Number 3 was in effect the same as number 2.

Number 4 declared that the board of equalization at its session in 1907 had no power to make an original assessment against Henry Timbrook for the property owned by him June 1, 1905.

Number 5 declared that the acts of the board of equalization shown in evidence did not constitute a valid assessment.

I.   The appellants contend that the assessor's book and all proceedings based thereon are void, because the book was not verified by the affidavit of the assessor.

The law of 1877 worked a revolution in the collection of taxes in this State.   Prior to that time all lands in the county on which taxes were delinquent were advertised *en masse,* and, upon an order of the county court, were sold in separate tracts, but all at the same time.   The proceedings culminating in such sales were summary in their nature and practically ex parte, and were, on that account, strictly construed.   The natural result followed.   The lands sold for very little, often not bringing the taxes.   The deeds made pursuant to such sales were almost uniformly held void by this court on account of some defect in the proceedings. The fact that thousands of dollars worth of property was sold for the taxes and costs or even less under such circumstances as to furnish practically no notice to the owner that such sale would occur, shocked the moral sense, and the law of strict right was properly held to apply to all such sales.

So far as we have been able to discover, the old summary method is still used in all the other States of the Union. Such being the case, the language of the text-books on the subject of taxation is all deeply impregnated with the idea of strict construction.

Judge Cooley states the rule by quoting from the opinion of the Supreme Court of Maine in Brown v. Veazie, 25 Me. 359, as follows: "Sales of real estate for the non-payment of taxes must be regarded in a great measure as an ex parte proceeding. The owner is to be deprived of his land thereby; and a series of acts preliminary to the sale are to be performed to authorize it on the part of the assessors and collector, to which his attention may never have been particularly called; and experience and observation render it notorious that the amount paid by purchasers at such sales is uniformly trifling in comparison with the value of the property sold. It has therefore been held, with great propriety, that, to make out a valid title under such sales, great strictness is to be required; and it must appear that the provisions of law preparatory to and authorizing such sales have been punctiliously complied with." [2 Cooley on Taxation (3 Ed.), 913.]

While this is not a suit for real estate tax, it is proper to consider the effect which the result of such summary proceedings have had on the decisions of the courts. After the enactment of the Law of 1877, no reason existed for strict construction. The summary remedy was ended. Every man became entitled to his day in court, the same as in case of the foreclosure of a mortgage on his real estate, so that he could not be sold out without actual knowledge unless he were a non-resident, and even then he had as effective notice as was possible.

While the other States retain the summary method, more or less modified in some cases, many of them have, in addition, statutory provisions for suits to

enforce the tax. In such suits the proceedings in the assessment of property and the levying and collecting of taxes are liberally construed.

In Hixon v. Oneida County, 82 Wis. 515, which was an injunction to prevent the collection of a tax, it was held that the collection could not be defeated by showing that the tax was irregular or void, but that it must appear that it was inequitable.

In Conn. Mutual Life Ins. Co. v. Wood, 115 Mich. 444, the court said: "It is essential to just and equal taxation that these proceedings be such as to convey a good title to the purchaser. Courts should liberally construe the revenue statute, so that the revenue shall be collected."

In Roads v. Estabrook, 35 Neb. 297, it is said: "The principal objections to the proceedings are that the property was not listed by the owner, and no refusal to list, or other reason why not so listed, was given by the assessors; that the assessor's oath was not attached to the rolls; that the name of the owner was not, in most instances, given, and in such instances that the lots were not assessed as unknown, and other like irregularities. No claim is made that the amounts charged were excessive, or that the payment thereof would burden the defendant beyond his fair proportion of the taxation required for the needs of the public. It has been frequently held by this court that in equitable proceedings to foreclose liens for taxes we will not consider objections which go only to the manner of the assessment, or the levy of the tax."

Judge Cooley quotes from Railroad v. People, 116 Ill. 401, as follows: "It is the settled doctrine . . . that anyone objecting to the enforcement of a tax assumes the burden of showing its invalidity. The presumption is that the tax is just, that all officers who have had any official connection with it have properly discharged their duties." [2 Cooley on Taxation (3 Ed.), 891.]

The consensus of opinion in other States is to the same effect.

It must be conceded that this court did not at first apply the rule of liberal construction to the Law of 1877.

Section 11392, Revised Statutes 1909, provides that the assessor shall make out and return to the county court a fair copy of the assessor's book verified by his affidavit. In three cases brought under our present law for the enforcement of the payment of taxes on land, it was held that when the assessor's book was not so verified the tax was void. [State ex rel. v. Cook, 82 Mo. 185; State ex rel. v. Schooley, 84 Mo. 447; State ex rel. v. Phillips, 102 Mo. 664.]

Section 11425, Revised Statutes 1909, requires that the tax book shall be authenticated by the seal of the court. In Railroad v. Apperson, 97 Mo. 300, an injunction proceeding to restrain the collector from selling personal property to pay taxes, it was held that, as the tax books were not authenticated by the seal of the county court, they were void, and that the collector, in making the levy, was a trespasser *ab initio.*

All those cases applied the rule of strict right. Under those cases the absence of the assessor's affidavit to his book was fatal to the tax, and so was the absence of certification under the seal of the court to the tax book.

The next case was State ex rel. v. Bank, 120 Mo. 161. The point was made in that case that the assessor's affidavit was attached to the original assessor's book mentioned in section 11370, and not to the copy thereof provided for in section 11392. Judge SHERWOOD (l. c. 172) held that those matters were not *jurisdictional,* and that jurisdiction had already attached when the assessor made out his assessment books, and that all subsequent proceedings were directory and within the domain of section 11383, which provides that no assessment or taxes shall be consid

ered illegal on account of any informality in making the assessment. The result of that decision was the destruction of the rule of strict construction in our tax law as it has stood since 1877, and the reasons therefor are clearly stated and will not be repeated here.

The case of Burke v. Brown, 148 Mo. 309, was decided under the Law of 1872, and for that reason does not contravene what is here said.

The Phillips case, 137 Mo. 259, reaffirmed the doctrines of the Bank case, supra, laying still greater stress on the curative statutes, and holding that after the assessor's book was *made out;* jurisdiction attached, and that everything else was directory.

Then followed Taft v. McCollough, 135 Mo. 588, in which it was held that the failure of the clerk to authenticate the collector's book by the seal of the court did not invalidate the tax. The assessor's affidavit to his book was held sufficient in form, but the court did not say, and was not called on to say, what would have been the result if there had been no affidavit.

In Wilson's case, 216 Mo. 286, Judge WOODSON says: "At an early date in this State, under the statutes then in force, some of the objections here urged by defendant might have been held valid, but the more liberal statutes of recent years and the decisions of this court construing them deprive these various assignments of all merit and reduce them to the rank of technical objections."

Section 11521, Revised Statutes 1909, provides: "No irregularity in the assessment roll, no omission from the same, nor mere irregularity of any kind in any of the proceedings, shall invalidate any such proceeding."

The same legislative power which provided for the assessor's affidavit, has also provided that the "omission" of such matters shall not invalidate the

tax; in other words such provision for an affidavit is directory.

The mere absence of the affidavit to the assessor's book should not in this case invalidate the tax sued for. By section 11344 the assessor is required, on entering office, to take an oath in substance the same as that required in the affidavit to the assessor's book, and the presumption is that he took that oath. Section 11403 requires the assessor and the other members of the board of equalization to take an oath "fairly and impartially to equalize the valuation of all the taxable property in such county;" and it is presumed they took that oath in this case.

. The board of equalization had power to raise or lower the valuation of all the property on that book on a percentage basis. [Black v. McGonigle, 103 Mo. 193.] It could add to the book property which the assessor had omitted, and drop from it property which he had placed thereon, and could raise or lower the value of any item of property on that book. Any citizen had the right to be heard on any such questions. The functions of this board and the time of their meeting are generally known to the citizens; and it is a matter of common knowledge that many people attend the sessions of the board.

The record in this case shows the action of the board by which the assessment of the county was finally completed and equalized. After such reconsideration of the assessor's book by the board of which the assessor was himself a member, surely the absence of the affidavit from the assessor's book as returned to the county court should not invalidate the assessment, especially in view of the curative statutes.

In addition to the above considerations, the defendants, as such executors, appeared before the board and were heard fully. They made certain claims for deductions from the amount of the assessment, and some of those claims were allowed by the board. They

made no objection to the assessor's book on account of the absence of the affidavit. If this tax should be declared void on account of such informality, the only result would be that the public burdens would be borne by the other property-owners of the county, and this estate would entirely escape from its equitable share thereof.

II. Instruction numbered one was properly refused as the record of the board showed that the assessment of Henry Timbrook was made as of omitted property, and was not based on the list given in by Tabitha Timbrook. By Section 11407, Revised Statutes 1909, the board had power to assess omitted property.

III. The complaint that the assessment was made against "H. Timbrook" after he was dead, is answered by calling attention to the fact that the property was assessed as of date June 1, 1905, at which time Henry Timbrook was living, and the assessment was properly so made.

IV. The assessment for the year 1905 was properly made under section 11401; and section 11403 gave the board of equalization power to equalize that assessment in the same way as in other cases.

The merits of the other points raised by appellants are disposed of in the above conclusions and we will not separately consider them.

The judgment is affirmed. *Blair, C.,* not sitting.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court.