THE STATE ex rel. TEARE, Collector of Holt County, v. THOMAS C. DUNGAN, Appellant.

**Division One, June 1, 1915.**

1. **TAXATION: Assessment: Lists: Made From Prior Books: Informalities.** The list required by the statute to be furnished by the assessor to the taxpayer is for the assessor's use in making up his books, and not for the benefit of the taxpayer. If the assessor fails to furnish a blank to the taxpayer upon which to list his property, and instead of doing so makes out his tax book from the description and valuation of lands as shown by the book for the previous year, the assessment is not void, nor the taxpayer relieved from the duty of paying the tax according to such informal assessment. Such matters are informalities, which by statute do not render the assessment invalid.

2. ——: ——: **No Appeal.** Where the taxpayer has notice of the valuations placed upon his lands by the assessor, for instance, if he has been informed that the valuations and assessments have been made from the assessor's books of the previous year, and does not appeal to the county board of equalization, the assessment and valuation as shown by the duly certified assessor's book are conclusive upon him.

3. ——: ——: **Changed By County Clerk.** A voluntary change by the county clerk of the valuations of property as shown by the assessor's book, whether done as an illegal spoliation of the book or as a wilful felony, is absolutely void, and in no way affects the validity and conclusiveness of said assessor's book, and the validity of the tax with which the lands are charged is to be determined as if such alterations had never been made.

265Mo.23

4. ———: ———: ———: **Subsequent Procedure: Directory.** A
valid assessment of lands is jurisdictional, and all subsequent
proceedings are directory and not jurisdictional; and the statute
provides a remedy by which any illegal changes by the county
clerk in the valuations as found in the properly returned as-
sessor's books, or any other irregularities or errors made after
the return of said book, may be cured by the appearance of the
taxpayer before the county board of equalization or the county
court or city council.

Appeal from Holt Circuit Court.—*Hon. W. C. Ellison,
Judge.*

AFFIRMED.

*T. C. Dungan pro se.*

(1)   The court erred in making its finding for the
plaintiff and rendering its judgment and decree for the
plaintiff.   No assessment was made of said lands as re-
quired by law.   To recover there must be a legal assess-
ment or there can be no delinquent taxes.   State ex rel.
v. Scott, 96 Mo. 72; State v. Spencer, 114 Mo. 574.   The
action of the assessor having been without notice to
defendant is void.   Abbott v. Lindenbower, 42 Mo. 162;
Thomas v. Chapin, 116 Mo. 396; R. S. 1899, sec. 9146;
Sec. 11350, R. S. 1909; State ex rel. v. Fullerton, 143
Mo. 682; State ex rel. v. Voselsang, 183 Mo. 17; State
ex rel. v. Railroad, 114 Mo. 11; State ex rel. v. Tregen-
heim, 114 Mo. 574.   (2)   The court erred in assuming
to act as and for the revenue officers of Holt county,
for it made an assessment of its own, fixing valuations,
the same as that fixed by the forgery of the assessor's
book by the county clerk.   (a)   There was no assess-
ment thereof made by the assessor of Holt county in
any of the methods prescribed by law.   (b)   The court
assumed to act as a board of equalization in raising
the valuation, if valuation it can be called, of defend-
ant's land from that appearing first on the assessor's
book, and without notice to defendant in any way.   (3)

If there was any assessment made of defendant's lands or any valuation fixed thereon it was done by the assessor's clerk and such valuation was that appearing on the previous year's assessor's book, as such clerk informed defendant that such valuation had been so entered, and defendant had the right to consider and believe it would so remain unless he had notice from the assessor or board of equalization that such assessment and valuation had been or would be changed. No such notice was given or had by defendant. He is presumed to have been satisfied with such assessment and valuation. Cooley on Taxation, 266-268; Mining Co. v. Neptune, 19 Mo. App. 438; Butler v. Supervisors, 20 Mich. 22; Sioux Ry. Co. v. Washington Co., 3 Neb. 3043. If the board can not change such assessment so judicially made, by the return of the assessor, without notice to the taxpayer, how can such board with full knowledge of a change made and a forgery of the assessor's book increasing defendant's land valuation, by the county clerk, its own secretary, by silent acquiescence do indirectly what it cannot do directly? The effect is the same to the taxpayer as it illegally deprives him of his rights and attempts without process of law, to take his property. Mining Co. v. Neptune, 19 Mo. App. 443. (4) The assessment of lands is not made until the assessor enters the lands or list into the assessor's book. State ex rel. v. Reed & Sutton, 159 Mo. 85. While the defendant might have had notice of assessment as shown by the return of the assessor's book and ample means for redress for any unauthorized action of the assessor by an appeal, no opportunity was afforded him to know of any change or increase made by the county clerk and ratified by the board of equalization. State ex rel. v. Springer, 134 Mo. 224; State ex rel. v. Stamm, 165 Mo. 73; Black v. McGonigle, 103 Mo. 133; State ex rel. v. Baker, 170 Mo. 195; State ex rel. v. Carr, 178 Mo. 235.

*Don M. Hunt* for respondent.

(1)   There was a valid assessment.   State ex rel. v. Cunningham, 153 Mo. 642; State ex rel. v. Casey, 210 Mo. 253; State ex rel. v. Reed, 159 Mo. 83; State ex rel. v. Carr, 178 Mo. 233; State ex rel. v. Bank, 120 Mo. 161; Sec. 11385, R. S. 1909.   (2)   The defendant took no appeal from the assessment to the board of equalization, therefore he has forfeited his right to object to the valuation placed on the property.   Dean v. Todd, 22 Mo. 90; State ex rel. v. Hoyt, 123 Mo. 356; State ex rel. v. Bank, 120 Mo. 175.   (3)   All other acts with regard to the tax levy being legal the unauthorized and unlawful acts of an officer cannot prevent the collection of the amount of tax which is due.   State ex rel. v. Carr, 178 Mo. 234; State ex rel. v. Bank, 120 Mo. 173.   (4)   If a valid assessment is shown, its entry upon the tax book and the failure of the property owner to pay it when due, a good cause of action is made out, and all other requirements and proceedings are mere formalities and intended to facilitate the collection of the taxes.   State ex rel. v. Wilson, 216 Mo. 287; Rockland v. Ulmer, 84 Me. 503; State ex rel. v. Carr, 178 Mo. 239.

RAILEY, C.—On March 10, 1911, plaintiff, as collector of Holt county, Missouri, sued defendant to recover one hundred and forty-four dollars and fifteen cents, the aggregate amount of taxes, interest, penalties and costs alleged to be due on six tracts of land, belonging to defendant and located in said county. Said taxes are charged to have been delinquent upon each of said tracts for the year 1906.   The petition alleges the election and qualification of said Teare as collector of said county; that defendant was the owner of each of said six tracts of land, which are separately described in the petition; that all of said land was liable for taxation, etc., for each of the years men-

tioned; that the assessor of said county was duly elected and qualified; that he listed and assessed the value for taxation of said tracts of land separately; that he made an assessor's book for said county as required by law, for each of the years for which said lands were so listed and assessed for taxation, which said book contained a complete list of all the taxable property of said county; that he entered in the parts known as the Land List and the Real Estate Book, in numerical order, each of said tracts of land; that he did, on or before January 20th next following each of said years, in which each of said assessments was made, and after the first day of June, next preceding, for each of the said years, for which said assessments were made respectively, make out and return to the county court of said county a fair copy of the assessor's book, made as aforesaid, duly verified by his affidavit annexed thereto, as required by law; that said assessments and valuations for each of said years were duly abstracted by the county clerk of said county and laid before the then State Board of Equalization, as the law required; that said assessments and valuations for each of said years were duly equalized by said Board of Equalization; that said equalized assessments and valuations were duly certified to the county clerk aforesaid, who thereupon, for each of said years, furnished one copy to the then assessor of said county; that another copy was laid before the County Board of Equalization of said county; that the County Board of Equalization aforesaid, did at the time and in the manner required by law, for each of said years, equalize and adjust said valuations and assessments, did give due and lawful notice to all persons interested therein that said board would meet at the time and place prescribed by law, to hear appeals from said valuations and assessments of said assessor on account of its action in raising and equalizing assessments and valuations, and did all other things in this connection required by law;

that each of said books was thereafter corrected, adjusted and the valuation duly extended as so equalized by and in accordance with the decisions of the State Board of Equalization and said County Board of Equalization; that after such final valuations, adjustments and assessments so made as aforesaid, and by virtue of the laws of Missouri, the duly elected, qualified and acting officers and agents of said state and county, having full authority so to do, as required by law, did by orders of record fixing the rates thereof, within the limits required by law, levy upon said real estate as so listed, valued, assessed and adjusted, in due proportion to its true valuation as so listed, valued, assessed and adjusted, certain state, county, school and other taxes on the separate tracts of·said real estate for the years, and in favor of the several funds, for the purposes, and to the amounts in the aggregate of $126.47, as shown by a tax bill, duly authenticated by certificate of the county collector, and attached to said petition.

Other allegations follow, but as the sufficiency of the petition is not questioned, and as the case was tried upon an agreed statement of facts, we do not deem it necessary to set out any further synopsis of the petition.

The answer denied the material allegations of· petition, and contained other averments tending to show that the law was not complied with in the making of said assessment, etc.

#### AGREED STATEMENT OF FACTS.

The case was tried in the court below upon the following agreed statement of facts:

"It is agreed that the following facts are true in the said cause:

"That the plaintiff was at the time of the institution of this said action and now is the duly elected, qualified and acting collector of Holt county, Missouri,

and that Don M. Hunt is his duly appointed attorney; that the defendant was, on the 1st day of June, 1906, and now is the owner of the lands set out and described in said plaintiff's petition and tax bill, in fee simple; that William Fitzmaurice was on the said 1st day of January, 1906, and for the two years thereafter the duly elected and acting county assessor of Holt county, Missouri, and that Frank Graham was his deputy and also city assessor for the city of Oregon, Missouri; that neither said county assessor nor his deputies ever at any time made or took any list of defendant's said real estate, nor did they or either of them ever visit the place of business or home of said defendant to take any lists of property or make any assessment list; that said defendant while at the courthouse or on the streets of Oregon, Missouri, was handed a blank assessment list by the assessor for the listing of his property, but the assessor at no time called at defendant's home or place of business to list his property or take or receive lists made by defendant; that no such list of said real property was ever requested, made, taken, received, demanded or filed except as hereinafter stated; that the said assessor and his deputies prepared and made the assessor's books for the year 1906, as had been done for many years before and ever since, by copying the previous year's, 1905's, assessor's books and descriptions and valuations and without regard to any lists taken or assessments made by them and in that manner the lands of defendant sued upon were entered in said assessor's book for 1906; that about the middle of January, 1906, the said county assessor met defendant upon the street and asked him about the assessment and to bring in his list in the afternoon on that day to the courthouse, as his assessment book for that year was being made up, which defendant did, and tendered same to the deputy in charge who declined to receive it and informed defendant that his prop-

erty had been entered upon the assessor's book several weeks before, the same as for the previous year, and that the list would be of no use and such list was not delivered; that some time after this suit was brought defendant ascertained that an alleged pretended list of personal property, same as for year before and en-, dorsed 'by permission,' and setting out and describing no lands, had been deposited without date, and an. alleged pretended list was likewise given in to city of Oregon, Missouri, and had also been deposited without date in the county clerk's office with the regular list, of said assessor; that the assessor's book was properly verified and returned to the county court on the 18th day of January, 1906, with the said lands of this defendant set out therein with such valuations as appeared upon the assessor's books for the year 1905,; the first four tracts in the name of T. C. Dungan and the last two tracts in the names of Dungan and Stevenson; that the county clerk made a copy of said assessor's book for the collector with such names, description and valuations, preparatory to extending the taxes thereon by his then deputy, but that afterwards said county clerk, E. A. Welty, without any authority of law and wilfully, and illegally and feloniously changed and forged the said assessor book and the. copy thereof made for the use of the collector by erasing and changing the valuation of each and every tract of defendant's said lands sued upon and described. in plaintiff's petition and in the certified tax bill. filed, herein as follows:

"Tract one from $800 to $1000.

"Tract two from $800 to $1000.

"Tract three from $2000 to $2200.

"Tract four from $2300 to $2600.

"Tract five from $500 to $600.

"Tract six from $650 to $750.

"That the said changed and forged assessor's book. and the changed copy thereof made for the use.

of the collector was by said clerk passed to the Board
of Equalization to be passed upon and equalized; that
the said assessor and his deputies and clerks, as well
as the county court and the clerk thereof and his dep-
uties and clerks and the county surveyor and the
prosecuting attorney of said Holt county, as well as
numerous citizens, each and all well knew of the er-
roneous and fraudulent entries upon the said assessor's
book, and of the forgeries and changes of the said
land assessment, but the board and officers and mem-
bers thereof neglected, failed and refused to restore
or rechange the same or to properly correct said as-
sessment or to have same corrected and entered, but
passed over the same, and that the county court know-
ingly and by its order of record instructed and ordered
an assessment on such changed and forged assessments
and valuations and instructed said county clerk to com-
plete and extend the State, county, school and road
taxes against said lands and on the valuations afore-
said, so changed and forged as aforesaid, and cause said
collector's books based on said assessment and valu-
ations to be turned over to the county collector; that
no notice was given at any time to the defendant of
the assessment of his land or of the valuation of his
said lands or the changes made by such clerk on said
assessor's book or of the changes so allowed to stand
by said board of equalization and the county court
or of the said pretended lists filed as aforesaid.

"That defendant refused to pay the said taxes
so assessed on such changed valuations and same were
returned delinquent and entered upon the back tax
books of said county; that the former collector, George
Seeman, and his attorney, H. T. Alkire, failed and
refused to bring suit for the collection of said taxes
appearing upon the said books on account of such
known facts, but turned over same to the present col-
lector and his attorney.

"It is hereby agreed by and between the attorneys for both the plaintiff and the defendant that the court is to decide on the said case and render judgment thereon and in doing so is to take the above agreed statement of facts as the facts in the case.

"In witness whereof we have hereunto set our hands this 30th day of August, 1911.

"DON M. HUNT,

Attorney for the Plaintiff.

"T. C. DUNGAN,

Defendant."

On September 8, 1911, the trial court (leaving off the caption and description of said land) entered of record the following judgment:

"Now here at this time this cause being submitted to the court on an agreed statement of facts filed, the court after hearing the testimony offered and being fully advised of the premises, doth find that the several tracts of land hereinafter described, situated in Holt county, Missouri, and belonging to the said defendant, were subject to taxation for the years hereinafter set out; that the same was duly assessed and the taxes legally levied thereon to the amount, for the various funds, and for the years hereinafter named. That all of the said amounts with interest thereon as follows, to-wit, on taxes for the year 1906 at the rate of one per cent per month from the first day of January, 1907, respectively, to the 1st day of March, 1907, and at the rate of ten per cent per annum thereafter is still due the State of Missouri and remaining unpaid on said real estate;

"That the following is a description of said lands together with the taxes, interest, collector's commission, county clerk's costs and attorneys' fees thereon, together with the different years for which taxes are due and unpaid and the amounts thereof against each tract respectively, to-wit:" (Here follows a description of the six tracts of land).

"The court further finds that the aggregate amount of taxes and interest due is one hundred and twenty-six dollars and ninety cents, and that the same together with the costs of this action, taxed at the sum of $8.50, is a charge and lien in favor of the State of Missouri and against the real estate above described.

"Wherefore, it is adjudged, decreed and ordered by the court that the plaintiff recover of and from the defendant a special judgment for the sum of one hundred and twenty-six dollars and ninety cents, together with the costs of this suit, and that the lien of the State be foreclosed and enforced against said real estate above described for the amount of taxes, interest and cost due, on each tract respectively, as set forth in this judgment, and that said real estate, or so much thereof as may be necessary to satisfy this judgment, interest and cost be sold, and that a special *fieri facias* issue therefor.''

Defendant filed motions for new trial and in arrest of judgment in due time. Both motions were overruled, and the cause brought to this court in proper form and stands for review here upon the agreed statement of facts and the judgment entered below on said facts.

I. It is contended by appellant, that the assessment of his land for the year 1906 was void, and that **Taxation: Assessment.** by reason thereof he should be relieved from the payment of the delinquent taxes assessed for said year.

It appears from the agreed statement of facts that neither the county assessor nor his deputies made or took any list of defendant's real estate, nor did either ever visit the place of business or home of said defendant to take any lists of property or make any assessment list. It is admitted that defendant, while at the courthouse or on the streets of Oregon, Missouri, was handed a blank assessment list by the asses-

sor for the listing of his property, but no such list of real property was ever requested, made, taken, received, demanded or filed except as hereinafter stated.

It is admitted that the assessor and his deputies prepared and made the assessor's books for the year 1906, as had been done for many years before and ever since, by copying the previous year's, 1905's, assessor's books, descriptions and valuations, without regard to any lists taken or assessments made by them, and in that manner the lands of defendant sued upon were entered in said assessor's book for 1906.

It is admitted that about the middle of January, 1906, said county assessor met defendant upon the street, asked him about the assessment, and requested him to bring in his list in the afternoon of that day to the courthouse, as his assessor's book for that year was being made up. Defendant thereupon tendered to the deputy in charge his list, but the latter declined to receive it, *and informed defendant that his property had been entered upon the assessor's book several weeks before, the same as for the previous year,* and that the list would be of no use and such list was not delivered.

It is further admitted that the assessor's book was properly verified and returned to the county court on the 18th day of January, 1906, with the said lands of this defendant set out therein, with such valuations as appeared upon the assessor's books for the year 1905, the first four tracts in the name of T. C. Dungan and the last two tracts in the names of Dungan and Stevenson.

It is admitted that the county clerk made a copy of said assessor's book for the collector, with such names, description and valuations, preparatory to extending the taxes thereon by his then deputy, but that afterwards said county clerk, E. A. Welty, changed and forged the assessor's book by erasing and changing the valuation of each and every tract of defendant's

said lands, "sued upon and described in plaintiff's petition and in the certified tax bill filed herein."

It is admitted that defendant's said lands were increased in valuation by said clerk, in excess of the value fixed by assessor, to the amount of $1100.

It is not claimed by defendant in this proceeding that his land was misdescribed, nor that the valuation placed thereon by the assessor was unreasonable or excessive. On the contrary, it is manifest from the record that defendant and the assessor were both satisfied with what had been done, in respect to the valuation placed by the assessor upon said lands, as shown by his assessor's book and the copy of same heretofore mentioned. No appeal was taken, or attempted to be taken, from the assessment made by the assessor. Defendant was informed as to the assessment thus made, and up to this point evinced no disposition to evade, or refuse to pay, the taxes which might thereafter be lawfully imposed, based upon the assessment of the assessor aforesaid.

Upon the foregoing facts, can the assessment made by the county assessor in respect to defendant's said lands be sustained? We are of the opinion that under the provisions of our statutes, and the decisions of this court construing same, the assessment and valuation made by the assessor as to defendant's lands are valid. [Sec. 9179, R. S. 1899, now Sec. 11383, R. S. 1909; State ex rel. v. Wilson, 216 Mo. l. c. 287, and cases cited; State ex rel. v. Casey, 210 Mo. l. c. 252-3; State ex rel. v. Birch, 186 Mo. l. c. 214; State ex rel. v. Carr, 178 Mo. l. c. 237-8-9; State ex rel. v. Reed & Sutton, 159 Mo. l. c. 85; State ex rel. v. Phillips, 137 Mo. l. c. 264; State ex rel. v. Bank of Neosho, 120 Mo. 172-3; State ex rel. Miller v. Hutchinson, 116 Mo. l. c. 402; Thomas v. Chapin, 116 Mo. l. c. 398-9; State ex rel. Watson v. Harper, 83 Mo. 670.]

Section 9179, Revised Statutes 1899 (Section 11383, Revised Statutes 1909), reads as follows:

"No assessment of property or charges for taxes thereon shall be considered illegal on account of any informality in making the assessment, or in the tax lists, or on account of the assessments not being made or completed within the time required by law."

In State ex rel. v. Wilson, 216 Mo. l. c. 287, Woodson, J., speaking for this Division, in which all the judges concurred, said:

"Under these sections this court has many times held that when an assessor makes out his assessor's books, jurisdiction attaches and the rest of the proceedings are only directory. . . . Mere informalities in making assessments of property or charges for taxes thereon, or in the tax lists, or on account of the assessments not being made or completed in the time required by law, and any informality in making the back tax book, should not affect its validity, and were not defenses in an action to collect back taxes . . .

"The broad principle announced and underlying all of these cases is, that when a valid assessment is shown, its entry upon the tax book and the failure of the property owner to pay it when due, a good cause of action is made out, and that all other requirements and proceedings are mere formalities and intended to assist and facilitate the collection of the taxes, and are not intended to be stumbling blocks and hindrances thrown in the way of a speedy collection of them."

In State ex rel. v. Casey, 210 Mo. l. c. 252-3, Burgess, J., held as follows:

"While it is true that neither the original nor amended return to the writ of *certiorari* shows a compliance with this statute, it is quite evident that the lists thereby required to be made out are solely for the convenience of the assessor, enabling him to make his assessments with the more expedition and accuracy; and as his failure to comply with the statute in no way prejudiced the taxpayer, such failure does not, in our opinion, invalidate the assessment in question."

In State ex rel. v. Carr, 178 Mo. l. c. 231, it appears that: ''The assessor only copied the lot from the assessor's book for the previous years without doing anything further whatever toward making an assessment of the lot in question.'' Judge MARSHALL, in an able opinion in behalf of the Court in Banc, in which all the judges concurred, said:

''It thus appears that the crucial question here is, whether a failure of an assessor to make out a list of the property to assess, in case the taxpayer fails to return such list when required, makes the whole assessment void.

''It is one of the cardinal rules for the construction of statutes, that the spirit and purpose of the enactment is an invaluable guide to the meaning thereof, for the letter of the law often killeth, while its spirit maketh alive.

''The sole purpose of the law in requiring the taxpayer to make out and return to the assessor a list of his property, is to aid the assessor in discovering all of the taxable property, to the end that it may be assessed and made to bear its proper proportion of the expenses of government. Such list made by the taxpayer and the valuation placed by the taxpayer on his property is not conclusive on the assessor. [State ex rel. v. Reed, 159 Mo. 77.] If the assessor discovers other property of the taxpayer which he failed to list, or which was omitted from taxation, it is his duty to assess it, even if it is discovered years afterwards. [Secs. 9176 and 9177, R. S. 1899.]

''The list made out by the taxpayer is not required to be returned by the assessor to the county court, but only a fair copy of the assessor's books is required to be so returned. [Sec. 9188, R. S. 1899.]

''It follows that if the list to be made by the taxpayer is solely for the use of the assessor and not for the benefit of the taxpayer, and if the assessor has power to assess other property omitted from the list

by the taxpayer, then the failure of the assessor to make out a list in the event the taxpayer fails to do so, in nowise prejudices the rights of the taxpayer, and therefore section 9148 must be deemed merely directory and not mandatory, and the failure of the assessor to make out such list does not affect the validity of the assessment.''

After considering several sections of our statute upon the subject under consideration, MARSHALL, J., said: ''Moreover, such lists whether made by the taxpayer or by the assessor are only memoranda for the personal use of the assessor in making up the assessment book. They are not evidence in a suit for the collection of the taxes assessed.''

We do not deem it necessary to pursue this subject further. The other authorities cited are in line with those quoted above, and conclusively establish the validity of the assessment made by the assessor of said county in respect to defendant's lands.

II. It appears from the agreed statement of facts ''that the assessor's book was properly verified and re-
Taxation:
Assessment:
Notice: Appeal. turned to the county court on the 18th day of January, 1906, with the said lands of this defendant set out therein with such valuations as appeared upon the assessor's books for the year 1905.''

The defendant had full notice of what had been done towards assessing his lands from the book of 1905. If not satisfied with such proceeding, he had the right to *appeal* from the action of said assessor.

Sections 9190, 9191 and 9192, Revised Statutes 1899 (Secs. 11394-5-6, R. S. 1909), read as follows:

''Sec. 11394. Every person who thinks himself aggrieved by the assessment of his property may appeal, and every appeal shall be in writing, and verified by affidavit, and shall state specially the grounds of the appeal and the matter or thing complained of, and no

other matter shall be considered by the board.

"Sec. 11395. If from any cause a session of the county board of equalization cannot be had on the day named in this chapter, the clerk of the county court shall take to his assistance any two justices of the peace of the county, and hold a court of appeals, giving notice thereof by written or printed handbills, put up in at least six public places in the county, not less than ten days prior to the day fixed for holding such court.

"Sec. 11396. The court shall hear and determine all appeals in a summary way, and shall 'correct and adjust the assessor's book accordingly."

In State ex rel. v. Reed & Sutton, 159 Mo. l. c. 85, Burgess, J., in referring to the appeal sections, said:

"When a copy of this book is filed with the county clerk, it imparts notice to everybody of its contents, and section 7572, Revised Statutes 1889, provides for an appeal from any assessment by any person who feels himself aggrieved thereby, to the county court of the county whose duty it is to hear and determine the appeal in a summary way and to correct and adjust the assessor's books if error has been committed in the assessment."

The above ruling was sustained by the Court in Banc.

In State ex rel. v. Hoyt, 123 Mo. l. c. 356, Macfarlane, J., said:

"When a taxpayer neglects or refuses to furnish a list of his property to the assessor, it becomes the duty of the assessor to make the assessment 'on his own view, or on the best information he can obtain.' If the owner thinks injustice has been done by the assessor, he has the right to appeal to the board of equalization and have his wrongs remedied. It has been held that the action of the assessor under the revenue law is judicial, and when the jurisdiction to assess the property exists, his valuation, unless appealed from, is

265Mo.24

.conclusive upon the one liable for the taxes.    [Ins. Co. v. Charles, 47 Mo. 462, and cases cited; Railroad v. Maguire, 49 Mo. 482.]''

It is conceded that the assessor returned a *correct* list of defendant's lands. No claim is made in either the record or briefs, that the valuation placed upon said lands by the assessor, was either unreasonable or unjust. The lands of defendant as entered, and the valuation placed thereon by the assessor in his book, are conclusive against defendant, on the record presented here.

III. The assessment of defendant's lands by the assessor having been shown to be valid, the illegal and unauthorized spoliation of the entries in the book by the county clerk, in increasing the valuation placed upon defendant's land eleven hundred dollars over that returned by the assessor, was, and is, absolutely void, and did not alter or disturb the assessment made by the assessor as aforesaid. This necessarily follows for two reasons: (a) because no such power is conferred by law upon the clerk of the county court, and (b) because the assessment having been legally made, and no appeal taken from the action of the assessor in respect to the assessment of defendant's lands, no other officer had any right to disturb the same unless authorized so to do by law. No such power having been conferred upon the county clerk, his act in changing the assessment was a *nullity*, and the case should be disposed of as though it had never occurred.

*Assessment: Changed by County Clerk*

IV. The assessment of defendant's lands having been held to be valid, and the attempted changes of the assessment made by the county clerk having been held to be void, all other proceedings in reference to the levy and collection of said tax are merely *directory*.

In State ex rel. v. Wilson, 216 Mo. 1. c. 287, we said: "Under these sections this court has many times held that when an assessor makes out his assessor's books, jurisdiction attaches and the rest of the proceedings are only directory."

In State ex rel. v. Bank of Neosho, 120 Mo. 1. c. 172-3, SHERWOOD, J., in behalf of Division Two, said:

"It is complained that the assessor failed to make out and return a copy of his book of the personal property as required by section 6718, but that he returned only the original assessor's book which was used for the equalization and extension of taxes by the county clerk. In relation to these matters it may be said that they are not jurisdictional facts; jurisdiction had already attached in the hands of the assessor when he made out his assessment books, and therefore his subsequent omission to make out a copy or copies of the same, etc., would not defeat the previously acquired jurisdiction, but such omission would be healed by the curative powers of sections 6710 and 6858, Revised Statutes 1879; the rule being that where jurisdiction has attached in favor of the assessor, then the residue of the proceedings may generally be regarded as directory and within the domain of statutes which provide against mere irregularities and omissions."

If the County Board of Equalization, and the members of the county court, knew that the county clerk had illegally attempted to raise the valuation of real estate upon the assessor's book of said county, and said board or court without notice to defendant permitted the valuation to remain placed upon said assessor's book by the county clerk, and said attempted increased valuation was being used as a basis for levying the taxes on defendant's lands, then defendant should have appeared before the county court and sought to have the alleged error corrected.

Section 9197, Revised Statutes 1899 (Sec. 11399, R. S. 1909) provides that:

"The county court of each county may hear and determine allegations of erroneous assessment, or mistakes or defects in descriptions of lands, at any term of said court before the taxes shall be paid, on application of any person or persons who shall, by affidavit, show good cause for not having attended the county board of equalization or court of appeals for the purpose of correcting such errors or defects or mistakes . . . . Valuations placed on property by the assessor or the board of equalization shall not be deemed to be erroneous assessments under this section."

Section 11492, Revised Statutes 1909, provides that:

"In all cases where the county court, or assessment board, or any city council or assessment board, shall have assessed and levied taxes, general or special, on any real estate, according to law, whether the same be delinquent or otherwise, and until the same are paid and collected, with all costs, interest and penalties thereon, the city council of any city and the county court of any county shall have the full power to correct any errors which may appear in connection therewith, whether of valuation, subject to the provisions of the Constitution of this State, or of description, or ownership, double assessment, omission from the assessment list or books, or otherwise, and to make such valuations, assessment and levy conform in all respects to the facts and requirements of the law. Any description or designation of property for assessment purposes by which it may be indentified or located shall be a sufficient and valid description or designation."

This suit was not commenced until the 10th day of March, 1911. It does not appear from the record that defendant ever made the slightest effort to have his assessment corrected, after it was changed by the county clerk, so as to correspond with the valuation

placed upon said lands by the assessor. Nor does it appear that he ever made any tender of the taxes which were legally collectible, if based on the valution made by the assessor.

The agreed statement of facts is vague and indefinite as to what action the county court or county board of equalization actually took, in proceeding with the tax levy after the copy of the assessor's book was filed with the county clerk, and the valuations illegally changed thereon by said clerk. If an improper valuation of defendant's lands was considered in determining the rate of taxation provided for in section 9280, Revised Statutes 1899 (Sec. 11420, R. S. 1909), defendant should have applied to the county court as provided by law, and sought to have that tribunal correct the error, if one was made. As aptly said by BURGESS, J., in State ex rel. v. Seahorn, 139 Mo. l. c. 610, after quoting from Rockland v. Ulmer, 84 Me. 503: "All taxation is burdensome, yet it is the duty of every citizen to bear his portion of the burden, and no taxpayer should be permitted to escape doing so, upon a mere technicality which in no way materially affects his rights." [Also see State ex rel. v. Carr, 178 Mo. l. c. 239.]

It is not claimed by defendant that his lands were wrongfully described, or assessed too high by the assessor. He made no effort to appeal from the assessment as made by the assessor, and was presumably satisfied therewith. He has shown no disposition to bear any portion of the burden sustained by others, but on the contrary, in his motion for a new trial, complains of the action of the trial court for computing the amount of taxes, due, in rendering its judgment, presumably upon the valuation returned by the assessor, instead of the assessment as fixed by the board of equalization, and the amount of taxes as extended by the county clerk under the order of the county court.

The back tax bill attached to the petition, as a basis of recovery, is duly certified as required by law, and makes a prima-facie case. The agreed statement of facts refers to the petition and said tax bill attached thereto, as being on file in the cause. The trial court had before it the petition, said tax bill and the agreed statement of facts. The conclusion reached by said court is sustained by the record, and its judgment is accordingly affirmed.

*Brown, C.,* concurs, understanding that the judgment is computed at the amount of the levy for that year upon the valuation returned by the assessor.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. *Graves, P. J.,* and *Woodson, J.,* concur; *Blair, J.,* concurs in result; *Bond, J.,* concurs with the modification endorsed by *Brown, C.*