THE STATE EX REL. FORD MOTOR COMPANY v. FRED GEHNER, as Assessor, and as President of Board of Equalization, and as Head of Assessment Division of Department of Finance, and EDMOND KOELN, as Collector of The Revenue, and LOUIS NOLTE, as Comptroller, of City of St. Louis.—27 S. W. (2d) 1.

Court en Banc, April 8, 1930.

*Moore & Fitch* for relator.

26

*Stratton Sharlel,* Attorney-General, and *A. M. Meyer,* Assistant Attorney-General, for respondents.

BLAIR, J.—This is an original proceeding by certiorari against respondent Gehner, as assessor and as president of the board of equalization, and Edmond Koeln, as collector, and Louis Nolte, as comptroller, all of the City of St. Louis, seeking to quash a supplemental assessment against relator for income taxes for the year 1926. Our writ issued. Respondents filed a joint return. Relator filed its motion for judgment on the pleadings, thereby admitting all facts in respondents' return which are well pleaded.

Relator is a Delaware corporation, with its principal office in Detroit, Michigan. It does business in Missouri and maintains a branch office in St. Louis. On April 14, 1927, relator filed in the office of respondent assessor its duly verified income tax return for the year 1926, showing total Missouri income of $3,524,802.19. Total deductions were claimed in the sum of $1,191,879.06, leaving $2,-332,923.13 of taxable income. On such return respondent Gehner assessed the tax upon relator's Missouri income for 1926 at .$23,-329.23, and certified the same to respondent Koeln for collection. The tax was paid by relator to respondent Koeln on May 31, 1927.

28

One of the items claimed by relator as a proper deduction from its Missouri income for 1926 was an item of $515,882.03, representing such proportion of its total Federal income tax as should properly be allocated to relator's Missouri business. This deduction was not challenged by the assessor at the time. However, on March 21, 1929, the income tax department of the State Auditor's office notified relator that the Missouri Supreme Court had ruled ''that a foreign corporation that does not pay its Federal income tax within the State of Missouri is not allowed to deduct this item from their Missouri State Corporation income tax returns,'' and asked relator to advise the deductions it had made for Federal income taxes in 1926 and 1927. On April 8, 1929, relator replied that it had deducted from its Missouri income tax for the year 1926 the sum of $515,878.03, and for the year 1927 the sum of $313,672.45, on account of Federal income taxes paid by it. On April 12, 1929, the state income tax department notified relator that it then proposed to disallow its Federal income tax deductions for 1926 and 1927 and to advise the assessor to set up an additional tax on the assessment books. Thereafter, and on or about May 1, 1929, respondent Gehner set up on his records against relator the following supplemental assessment: ''Additional taxable income on account of disallowing deductions of Federal taxes (Missouri Supreme Court opinion, 292 S. W. 1028; letter on file from company); income to be taxed $515,878; tax assessable at one per cent $5,158.78,'' and respondent Gehner certified such assessment to respondent Koeln and the same was set up against relator on the collector's income tax records on May 15, 1929, and on the same day respondent Koeln made out and delivered to relator a tax bill for such additional tax. It is the record of this supplemental assessment, covering taxes on additional income for 1926, which relator now seeks to quash.

On April 8, 1927, this court decided the case of State ex rel. Liggett & Myers Tobacco Co. v. Gehner, 316 Mo. 1075, 292 S. W. 1028, wherein it was held that a foreign corporation which paid its Federal income tax in Missouri was entitled, under the Fourth Clause of subdivision (2) of Section 13114, Revised Statutes 1919, to deduct the entire amount thereof in making its return for income taxes due the State of Missouri. We there said *arguendo* that ''as no provision is made for any reduction for Federal income taxes paid outside of Missouri, corporations, organized under the laws of other states and having their principal offices in another state must, therefore, pay their Federal income taxes in such other state and can have no deductions at all in this State on account of payment of Federal income taxes.''

While what we said in the foregoing excerpt from the Liggett & Myers case was perhaps not necessary to a decision in that case, it was undoubtedly correct, if the question then before the court was

correctly decided. It must now be held upon authority of the Liggett & Myers case and as a proper and necessary construction of the Fourth Clause of subdivision (2) of Section 13114, Revised Statutes 1919 (repealed, Laws 1927, pp. 475 to 484), applicable to income tax returns for the year 1926, that a corporation organized under the laws of another state, which paid its entire Federal income tax in another state where it had its principal office, was not entitled to deduct from its Missouri income for 1926 any sum whatever for Federal income taxes so paid.

Relator does not now claim that it would not have been required to pay a tax of $5,158.82 upon an additional income of $515,882.03 now appearing to have been improperly deducted in its income tax return for 1926, if the assessment therefor had been regularly and timely made. Its contention is that the purported supplemental assessment of May 1, 1929, was made without authority of law and is void and that the record thereof should be quashed.

Relator made fifteen so-called "assignments of error," which are largely statements in different form of the following contentions: That relator having made and timely filed its income tax return for 1926, claiming the right to a deduction for Federal taxes it had paid, and the assessor having accepted said report and made the assessment in accordance therewith and certified same to the collector and relator having paid the tax bill so certified, the assessor thereupon lost all jurisdiction over the taxable income of relator for the year 1926 and had no power in April, 1929, to make a redetermination of relator's taxable income for that year; that the tax levied on May 1, 1929, on the additional income of relator earned in 1926, was null and void and the tax bill therefor certified to the collector was unauthorized and void and violated certain provisions of the State and Federal Constitutions; that relator was not notified of the attempted additional assessment until it received a tax bill therefor and relator was thereby deprived of its right to a hearing and to an appeal to the board of equalization in violation of the same constitutional provisions.

It is well established that the right of the taxing authority to levy a particular tax must be clearly authorized by the statute and that all such laws are to be construed strictly against such taxing authority. [Hannibal ex rel. Bassen v. Bowman, 98 Mo. App. 103, 71 S. W. 1122; In re Estate of Clark, 270 Mo. 351, l. c. 362, 194 S. W. 54; State ex rel. Insurance Company v. Hyde, 292 Mo. 342, l. c. 352, 241 S. W. 396.]

A careful examination of Article XIX, Chapter 119, Revised Statutes 1919, relating to taxation of incomes and subsequent amendments applicable to the assessment and collection of taxes upon incomes earned in 1926, discloses no specific authority vested in any official to levy a tax upon additional income under the circumstances

disclosed by this record. Nor do respondents attempt to point out any such statutory authority. The 1927 and 1929 amendments to Article XIX, Chapter 119, have no bearing on the question before us, because said amendments could not apply to income earned in 1926.

The General Assembly evidently felt that the law failed to make provision for the correction of mistakes like the one before us. By Laws of 1929, Section 13123, page 420, it is provided that, at any time within three years after any income tax return has been filed, the State Auditor may certify to the assessor any deficiency therein determined by him and thereupon the assessor shall make an additional assessment in accordance with such certificate. That is practically what was undertaken to be done in this case by the Auditor and respondent assessor in respect to the income earned over two years before the 1929 Act was passed.

At the time respondent Gehner undertook to assess the tax against relator for additional income for 1926. Sections 13133 and 13126, Revised Statutes 1919, were in force. Section 13133 provided that, in the performance of their duties in respect to the assessment of income taxes, assessors shall possess all of the powers possessed by such officers in the assessment of personal property and also the power to estimate incomes. Section 13126 made applicable to their duties in respect to income taxes the duties of boards of equaliza-tion and boards of appeals, or boards exercising similar powers and duties, in respect to taxes on personal property, so far as the law is applicable, with the additional power to estimate incomes. We must, therefore, examine the duties of such officers in connection with the assessment, equalization and levying of taxes on personal property to see if there are provisions in the statutes in relation thereto applicable to the assessment, equalization and levying of income taxes, which authorize the assessment against relator of taxes upon his additional income for the year 1926.

The learned Attorney-General, representing respondents, cites no statutory provisions authorizing such additional assessment and frankly concedes that he has found no exact parallel to the situation in this case in any reported case in Missouri; but at the same time contends that such situation is not precisely analogous to that pre-sented by the cases cited and relied upon by relator. He contends that the law itself levied the tax upon relator's 1926 income and that it is the policy of the law to see that the tax is collected as thus levied.

In the sense that no subordinate taxing authority has the power to fix the rate of tax on incomes, Section 13112, as amended by the Laws of 1921, First Extra Session, page 187, levied the tax upon relator's 1926 Missouri income. But the determination of the amount of the income to which the rate of tax fixed by statute was applicable

was left to assessment by the assessor. He is not bound by the return of the taxpayer. He must not only determine in the first instance the correctness of the income reported by the taxpayer, but as well the propriety of the deductions claimed by the taxpayer. The performance of his duties in such respects constitutes the assessment of the taxpayer's taxable income. In no sense does the statute itself determine the amount of the taxes.

The assessments made on personal property by the assessor are subject to review of the board of equalization. This body and the assessor act judicially. [St. Louis, etc. Insurance Company v. Charles, 47 Mo. 462, 1. c. 466; North Missouri Railroad Company v. Maguire, 49 Mo. 482, 1. c. 483; State ex rel. Wyatt v. Hoyt, 123 Mo. 348, 1. c. 356, 27 S. W. 382; State ex rel. Johnson v. Merchants & Miners Bank, 279 Mo. 228, 1. c. 234, and cases, 213 S. W. 815.] So far as the same officers have analogous duties in respect to the assessment and equalization of income taxes, their acts in connection therewith are likewise judicial in character.

The assessment of personal property made by the assessor becomes final unless changed by the board of equalization. Thereafter the assessing authorities have no jurisdiction or power to reopen the assessment. [State ex rel. Hopkins v. Tobacco Co., 140 Mo. 218, 1. c. 223, 41 S. W. 776; State ex rel. Hayes v. Seahorn, 139 Mo. 582, 1. c. 610, 39 S. W. 809; State ex rel. Wenneker v. Cummings, 151 Mo. 49, 1. c. 59, 52 S. W. 29.] Nor may these officers increase the assessment without notice to the taxpayer. [State ex rel. Ziegenhein v. Spencer, 114 Mo. 574, 21 S. W. 837.] The same rules must be regarded as applying to the assessment of incomes for taxation.

The case of Cape Girardeau v. Buehrmann, 148 Mo. 198, 49 S. W. 985, cited by relator, is quite illuminating on the power of the assessor to make additional assessments. There Buehrmann had made a return for the fiscal year ending the first Monday in May, 1891, on personal property belonging to an estate of which he was executor. The property returned was described merely as "personal property." The return was accepted by the assessor without objection and passed the board of equalization without challenge, was certified to the city collector and was by him collected from Buehrmann on April 30, 1891. In June, 1891, the city assessor "assessed back" for the year ending the first Monday in May, 1891, $6300 of personal property, which it was claimed Buehrmann had failed and neglected to return for taxes. One count of the petition was based on the tax bill thus made and certified. The judgment of the circuit court enforcing this tax was reversed. In disposing of the validity of the tax bill covered by the first count, GANTT, P. J., said:

"The ordinance of the city provided that, 'If by any means any personal property as contemplated by this ordinance, or any lot or part of lot or tract or part of tract of land, shall be omitted in the assessment of any year or series of years and not put upon the assessor's book, the same when discovered shall be assessed by the assessor for the time being and placed upon his books with all arrearages of taxes which ought to have been assessed and paid for in former years charged therein.' The first assessment of Mrs. Buchrmann's estate for city taxes of 1891 described the personal estate merely as 'personal' property. There was nothing to indicate whether it consisted of live stock, furniture or bonds or notes.

"No objection was made to that assessment by the assessor and it passed the board of equalization for that year without challenge. Having been finally received it formed the basis of the taxes to be extended thereon for that year. Had it been grossly excessive and no complaint had been made to the board of equalization, it would have been final as to the executor. Can it be true that an assessor can adopt this method of rectifying his valuation, while the taxpayer is denied relief because he did not appeal or seek relief from the board of equalization? It affirmatively appears from the testimony of the assessor that he did not discover any specific property which he had omitted from his assessment in 1891, but simply took his total of $6,300 for his 'back assessment' from the county clerk. It is apparent he could have obtained this information as readily in 1891 before completing his valuation as he did after his roll had been returned, the levy extended and the tax paid. To permit such a practice to obtain would work great confusion. The assessor is required to make his valuation of property when he receives the list or makes it upon his own information. 'If the taxpayer himself does not appeal he has the right to suppose that the assessment will be allowed to stand as made.' [Cooley on Taxation (2 Ed.) 420; Rich Hill Mining Co. v. Neptune, 19 Mo. App. 442; State ex rel. v. Spencer, 114 Mo. 578.]

"No doubt if specific real property is overlooked or omitted it can be subsequently assessed for the previous omitted years, but can it be said the personal estate was omitted when as in this case a lumping assessment is made in one year and the taxes extended and paid, and the next year another equally general description is made the basis of a back assessment, only increased in amount. How can it be known that the same property is not at least partially assessed twice for the same year. This is not a technical reassessment, but is the *ex parte* act of the assessor only, correcting his first assessment, without notice to the taxpayer, and without opportunity to be heard before the board of equalization.

"This ordinance permits the assessor, not the county clerk, to extend the arrearages of taxes. The general statutes of the State

only permits this back assessment of real estate and they govern in the city as well as the county. [R. S. 1889, sec. 1902.] But conceding that the ordinance is valid, still we think the back assessment when compared with the alleged omitted year should show on its face the specific property omitted, and unless it does so it is void. It necessarily follows that without reference to other points raised, the so-called back assessment for the year 1891, did not constitute any ground of liability and the court erred in not sustaining the objection to the evidence of plaintiff and in not finding for defendant on said count.''

To the same general effect is Hannibal ex rel. v. Bowman, supra. If the assessors in the Buehrmann and Bowman cases were without authority to assess additional personal property where the taxpayer in the previous years had returned an insufficient amount of such property, how can it be possible that respondent assessor may go back two years to make an additional assessment for income actually appearing on the face of relator's return which was not taxed because relator, with the concurrence of the assessor at the time and without subsequent challenge from the board of equalization, was knowingly permitted to omit same from the assessment as a claimed deduction?

Respondents cite Sections 12819, 12801 and 12969, Revised Statutes 1919, in support of the contention that respondent assessor had jurisdiction to correct the omission in relator's 1926 income-tax assessment. Section 12819 provides a scheme for subsequent assessment and collection of taxes where ''there has been a failure to assess the property in any county for any year or years.'' This section covers the situation where the entire assessment for the county has been omitted for any year or the assessment sought to be made has been held void for some reason. The section has no application to the omission of assessable personal property from the return of an individual taxpayer. State ex rel. Howard v. Timbrook, 240 Mo. 226, l. c. 240, 144 S. W. 843, cited by respondents, held this section applicable where the entire assessment for the year was void. See, also, Hannibal v. Bowman, supra.

Section 12801 is as follows:

''No assessment of property or charges for taxes thereon shall be considered illegal on account of any informality in making the assessment, or in the tax lists, or on account of the assessments not being made or completed within the time required by law.''

This section does not give the assessor authority to make a given assessment but, where he has such authority, mere subsequent informalities will not invalidate the assessment. [State ex rel. Teare v. Dungan, 265 Mo. 353, l. c. 365, 177 S. W. 604; State ex rel. Brown v. Wilson, 216 Mo. 215, l. c. 287, 115 S. W. 549.]

Section 12969, like Section 12801, applies merely to irregularities, informalities and omissions in subsequent proceedings, where the

assessment is authorized and has been timely made. [State ex rel. Brown v. Wilson, supra.]

Respondents cite State ex rel. v. Timbrook, supra. The assessment of personal property there made in 1907 for the year 1905 was clearly authorized by what is now Section 12819, Revised Statutes 1919. The law authorizing township organization was held unconstitutional by this court, and Caldwell County had been operating under that law. Thereupon the Governor appointed an assessor and collector for Caldwell County and they were held to have full statutory power and jurisdiction to assess and collect personal taxes for the year 1905, which the assessors of the invalid township organization had undertaken to assess. The assessor appointed by the Governor had the power to correct the return made by Timbrook to the person acting as township assessor and to add to the assessment property which Timbrook had failed to list. The case lends no support to the contention that respondent assessor had power or jurisdiction in 1929 to correct relator's return for 1926 income.

Respondent relies on First National Bank v. Anderson, 196 Iowa, 587, 192 N. W. 6. There the bank in January, 1920, made a return showing the net value of its capital, surplus and undivided profits (not including real estate) at a certain sum and stated that it was the owner of certain Government securities which exceeded in value the bank's capital, surplus and undivided profits, not including real estate. After the Government securities were offset against the other personal property of the bank, nothing was to be assessed against the individual shareholders of the bank. Subsequently, the statute authorizing the deduction of Government securities from capital, surplus and undivided profits was held invalid by the Iowa Supreme Court. Thereafter the county auditor corrected the assessment by adding the names of the bank's shareholders, as furnished in its statement, and the proportionate assessments against each shareholder. The omission to do this in the first place was clearly due to the supposition that the statute authorizing the deduction was valid.

The action of the county auditor was upheld by the Iowa Supreme Court and the shareholders were held individually liable for the tax. These bare facts might be said to lend some support to respondents' contention. But the right of the county auditor to make the correction depended upon the statute of Iowa set out in the opinion, which provided that the county auditor "may correct any error in the assessment or tax list, and may assess and list for taxation any omitted property," and it was held that other sections of the Iowa Statute, noted and considered in the opinion, showed that it was not intended by the Legislature to limit the power of the county auditor so that he could not make such corrections after the delivery of the tax list to the treasurer for collection.

In the absence of comparable statutes in Missouri at the time respondent assessor attempted to assess a tax against relator's additional income for 1926, the Iowa case, based as it is upon the particular statutes of that state, is of no aid to respondents. The case might be regarded as authority for respondents' contention if there had been in force in this State, at the time respondent assessor attempted to make the additional assessment against relator, a statute similar to Laws of 1929, page 420, above referred to, which authorizes the State Auditor, within three years after any return has been filed, to certify to the assessor deficiencies in such return.

Our conclusion is that respondent assessor, under the statutes in effect in 1927, in view of the facts admitted by the pleadings, was without jurisdiction or authority in 1929 to make an assessment of income taxes against relator for additional income earned in 1926 or to certify the same to respondent collector for collection. Relator's motion for judgment on the pleadings should be sustained, and the records of such assessment in the offices of the assessor and collector of the City of St. Louis should be quashed. Let an order issue in accordance with this conclusion. All concur.