Carl F. Wymore and Maye L. Wymore, a Minor by Her Guardian, Frank H. Wymore, Appellants, v. Al. Markway, County Collector of Cole County.—89 S. W. (2d) 9.

Division One, December 18, 1935.

*Carl F. Wymore* and *Irwin & Bushman* for appellants.

*Elliott M. Dampf* and *T. S. Mosby* for respondent.

HAYS, J.—Suit by the appellants as plaintiffs against the county collector of Cole County to enjoin the collection of certain taxes assessed against Inlot 464 and Inlot 468 in Jefferson City.

It was alleged in the petition and shown in the proofs that the tax return in question was made by Frank H. Wymore, as the guardian and curator of the plaintiffs, by filing with the county assessor an "Assessment List" in June, 1930, for the taxes for the year 1931. He listed Inlot 464 and gave the value thereof as $47,000, and listed Inlot 468 and gave the value thereof as $40,000. This list was sworn to as provided by Section 9756, Revised Statutes of Missouri, 1929, and was delivered in person to the assessor of Cole County. At the time the list was delivered Mr. Wymore discussed the value of the property with Mr. Tanner, the assessor.

The assessor thereafter, without any notice to Mr. Wymore, caused his clerk to enter the property on the assessment rolls as of the value at which the property had been assessed for the year previous. Thus Inlot 464 was entered on the rolls at $68,000, being $21,000 in excess of the value listed; and Inlot 468 was entered on the rolls at $60,000, being $20,000 in excess of its listed value; making a total excess of $41,000. It is admitted in the record that no notice of any sort was given Mr. Wymore by the assessor that the values as set out on his assessment list as delivered had in any way been changed; and he had no actual notice of the fact until after the county board of equalization had adjourned.

It was shown by the proofs that the amount of taxes due and payable on an assessed valuation of $87,000 for the two properties as returned by Mr. Wymore, would amount to $1828.30, and that the amount of taxes on $41,000 according to the excess in value as added by the assessor would amount to $856.90, or a total of $2685.20. Plaintiffs contended and alleged that the additional tax of $856.90 was unlawful for the reasons hereinafter stated. They tendered into court the sum of $1828.30, which they conceded was lawfully due, and asked the court to require the collector to accept that sum in satisfaction of all taxes levied against said property, and that the collector be restrained from collecting or attempting to collect the additional sum of $856.90.

Upon the trial the court found for the defendant, dismissed plaintiffs' bill and refused to grant them the injunctive relief sought. Plaintiffs appealed. The construction of revenue laws of the State is involved; hence this court's jurisdiction of the appeal. [Art. 6, sec. 12, Const. of Mo., Amendment of 1884, sec. 5.]

It is well to preface here the statute pertaining to initial assessments. [Sec. 9756, R. S. 1929.] This section requires an assessor to list the taxable personal property in his county, and assess its value, and for this purpose requires each person to make a sworn statement of all his taxable property, except certain specified classes,

and of its value; and that such list shall contain, among other things, a list of all real estate and its value, and said list shall be signed and sworn to by him and delivered to the assessor.

The bill in substance charged that, "After said assessment list had been filed in the office of the county assessor he *arbitrarily and without warrant of law* and authority *wrongfully and without notice* to plaintiffs entered said assessments on his assessment books" at the greater valuations stated above; that he thereafter delivered said books to the county clerk, who entered upon the county collector's books the taxes for 1931, as the same were wrongfully and erroneously computed upon the valuations as increased in the manner already stated and as charged to be in excess of the lawful assessment against said properties. (Italics ours.)

The bill charged also that having had no notice of the raise (made theretofore by the assessor) at the time the county board of equalization thereafter met, plaintiffs had no opportunity to apply to said board and now have no adequate remedy at law.

The answer joined issue by a general denial.

The oral evidence on the question at issue was very brief. Mr. Wymore, the curator, sought the assessor at the latter's office with regard to the assessment list. Wymore testified: "I requested value comparison with other store buildings and apartment buildings in Jefferson City, then he and I agreed to list our property at $47,000 for the store building and $40,000 for the apartment building." He made out the blanks, filling in the above valuations. The assessor, to the contrary, testified: "When he (Wymore) came in and made out his return he told me the amount he thought was fair and I put it on the assessment list, and I told him that it was too much of a cut and I didn't think it would stick . . . but I entered it on the list just as he said." The assessor, in making his assessment took the assessor's book of the previous year, noting thereon such changes as he desired to make, then turned the book over to his clerk who, at his direction, in making up the current assessor's book, copied the valuations appearing in the former book. It further appears that Mr. Wymore, had during a period of several years previous, been attempting, though unsuccessfully, to secure a reduction in the assessed valuation of these properties which had uniformly been assessed at the valuation, respectively, of $48,000 and $60,000. It inferentially appears that he perhaps thought he had succeeded in listing the property at his own valuation, insofar as the assessor was concerned. Yet he was not, as it appears, without doubt as to the outcome. He waited until the last afternoon of the sitting of the board of equalization, to inquire of the county clerk whether the board had as yet taken up the Wymore property. Receiving a negative answer, he left after requesting the clerk to inform him by telephone when the board should come to this property.

50

Next morning he called the clerk and received the information the board had finally adjourned the preceding afternoon. He then sought relief from the county court which, informed of the facts, declined to act.

The respondent maintains that the law presumes that the assessor did his duty, and that there was neither allegation nor proof of fraud, and hence the assessment should not be disturbed; citing State ex rel. v. Western Union, etc., Co., 165 Mo. 502, 65 S. W. 775; State ex rel. v. Edwards, 315 Mo. 209, 286 S. W. 25, and other cases. Such a presumption does obtain, and the other general rule of law also is as stated.

We construe appellants' bill to charge arbitrary action on the part of the assessor in that, without legal right or authority, he, without giving them actual notice, entered his increased assessment upon the assessment roll instead of entering the valuations listed by the taxpayer, and that his act in so doing was an obvious violation of law, and therefore beyond, or in excess of, his jurisdiction.

From the conclusion just stated it necessarily follows that the question of notice *vel non*, and any question of whether or not Wymore relied thereon, are eliminated from the case, as the plaintiffs are now being accorded their day in court to contest the assessor's action, and to gain complete redress if entitled thereto. Nor are we concerned with the actual *values* of the property, or with discrimination as between them and other similar properties, as no such issues were raised by the pleadings; only *estimated* values are to be dealt with—that of Wymore, on the one hand, and that of the assessor on the other. So we view the assessment as of the time the acts of the assessor were performed. The ultimate question just referred to is that of the assessor's jurisdiction in the premises— that is, his legal authority—to assess the property at a valuation different from that placed upon it by the property owner in the assessment list delivered by him to and received by the assessor, and of whether the latter acted honestly and in good faith or whether arbitrarily. Lack of jurisdiction of assessing officers has been held to be a ground for relief in equity. [Boonville National Bank v. Schlotzhauer, 317 Mo. 1298, 1. c. 1317, 298 S. W. 732; Brinkerhoff-Faris Trust & Savings Co. v. Hill, 323 Mo. 180, 19 S. W. (2d) 746; Bridge & Transit Co. v. Blaser, 318 Mo. 373, 300 S. W. 778.]

Want of notice given of the action of the assessor and the consequent lack of ability on the part of the appellants to appeal in due course to a statutory board of appeals, are pleaded in the bill as showing a lack of adequate remedy at law available to appellants. Evidence bearing upon the question of the good faith of the assessor came into the case, without objection being interposed, in the form of a conclusion drawn by Mr. Wymore, and as tending to show bad faith on the part of the assessor; and specific testimony in rebuttal

thereof was given by the assessor. This evidence bears upon the issue of whether the assessor's action complained of was arbitrary in the sense of being in bad faith, and it was *dehors* the assessment record or judgment. Besides, the ultimate question presented for decision is a question of law, a question which a statutory board of appeals, whether county board of equalization or State Tax Commission—as available and ordinarily adequate (Brinkerhoff-Faris case, 323 Mo., supra; State ex rel. City of St. Louis v. Caulfield, 333 Mo. 270, 62 S. W. (2d) 818),—would be without guidance in settling, because the decisions of this court are not in harmony with respect to the legal significance of the valuations placed on his property by a property owner in his assessment list as returned to the county assessor. Nor would certiorari be adequate, since it would bring up only the record of the assessment judgment of the taxing authorities and not matters *dehors* the record. For these and other reasons we think appellants had no adequate remedy at law and that this proceeding in equity is maintainable under the Brinkerhoff and Caulfield cases cited next herein above.

The appellants take the position that the assessment of property for taxation is made by the assessor by obtaining from the taxpayer a list of his taxable property and its value; then when this list is received the valuation thus placed on the property is its assessed value. The authorities cited in support of that position are State ex rel. v. Gehner, 325 Mo. 24, 27 S. W. (2d) l. c. 4; State ex rel. v. Spencer, 114 Mo. l. c. 577, 21 S. W. 837; Cape Girardeau v. Buehrmann, 148 Mo. l. c. 203, 49 S. W. 985; Rich Hill Mining Co. v. Neptune, 19 Mo. App. l. c. 442; Relfe v. Columbia Life Ins. Co., 11 Mo. App. l. c. 381, and State ex rel. v. Cummings, 151 Mo. l. c. 58, 52 S. W. 29. We will now briefly examine the cases cited above and later others bearing upon the initial assessment.

State v. Spencer, supra, was an action on a delinquent tax bill. The facts were that the property owners made due return to the assessor of their property and its value, giving its "correct valuation." Afterward without notice to them the valuation was raised to a stated sum and the assessment raised accordingly without their knowledge at the time nor until the time for statutory appeal was past. The court (Div. Two) held, (1) that the failure of the taxpayer to give his list is the basis and condition precedent to any authority in the assessor "to make out the list for him;" (2) that the act of the assessor was without jurisdiction and void inasmuch as a proper list had already been returned. The court, *inter alia*, said: "When the defendants in this cause delivered their list to the assessor, *without objection from him*, they had a right to presume, and the law justified them in that presumption, that their valuation of the property was accepted and would remain as delivered. And even if the assessor had authority . . . he could not do

this without notice to the party affected thereby." The above case cites as supporting authority (with several more from foreign jurisdictions), Relfe v. Life Insurance Co., supra, referring to it as being precisely in point. The Relfe case, in fact, had to do with an attempted assessment of property thought to have been omitted from the tax return as made and the case was actually ruled upon the statute pertinent to omitted property, and not upon the statute pertaining to initial assessments.

Rich Hill Mining Co. v. Neptune, supra, cited in the Spencer case, deals with a situation different from that presented in the Spencer case, or in the case at bar. It was an appeal from a judgment in certiorari quashing the record of a county board of equalization by reason of the board's having, without notice, raised a property owner's assessment as shown in the completed assessment roll. We do not purpose to controvert the incontrovertible fundamental principle referred to in that case, to the effect that an assessment completed by the assessor cannot by a board of review, or by the assessor himself, be raised without notice to the parties affected thereby. Such is the sum of the holding in the Mining Company case.

Cape Girardeau v. Buehrmann, supra, involved a back assessment for a previous year, made without notice, long after the completed assessment of the previous year. The court does, however, there say: "The assessor is required to make his valuation of property when he receives the list or makes it upon his own information." The statement is patently *obiter* as to the first branch of the last proposition stated.

State ex rel. Ford Motor Co. v. Gehner (en banc), 325 Mo. 24, 27 S. W. (2d) 1, was an original proceeding by certiorari. It involved an attempted back assessment against a foreign corporation which had timely filed its income tax return, in which the right was claimed to a deduction for Federal income taxes it had paid in another state for that year. The assessment went through the usual course and into the tax books and the tax was paid to the collector. Three years later the assessor undertook to make a redetermination of the corporation's taxable income for the year for which the same had passed into the final assessment judgment and been paid. The court very properly held that the assessing authorities were without jurisdiction to make such reassessment, the court citing the Spencer case, supra. The case was similar on its facts to Cape Girardeau v. Buehrmann, 148 Mo., supra, from which the court quoted with approval a long passage (l. c. 32) to the effect that, if the taxpayer himself does not appeal he has the right to suppose that the assessment will be allowed to stand as made. In this Gehner case the court reaffirmed that assessing officers may not increase an assessment without notice, citing the Spencer case in that connection (l. c. 31).

We have seen that the cases above assume that the property

owner's listing of his property and stating in his list his estimate of the value of the property, and the assessor's acceptance of the list without objection, completes and constitutes the assessment.

Unless it be found in the case at bar, as the chancellor did *not* find, that the assessor's acceptance of Mr. Wymore's list, containing as it did *his* estimate of the value of the property, was an unqualified acceptance, on the part of the assessor, as his own estimate, the present contention of the appellants that the transaction was a finality in that respect, would not find full support in the Spencer case and the like; unless, as it may have been, it was a qualified acceptance made with intent to deceive. But of this question of acceptance, more later. Until then we proceed on the assumption that the assessor's action was not arbitrary.

█ It would seem that the viewpoint of the above cases regarding Section 9756, supra, disregards the duty the statute referred to above lays upon the assessor to assess the property values. Primarily it is his duty to assess and value, and the property owner plays a subsidiary part. Associated sections contemplate a continuing and more extended process of assessment than the portion above mentioned includes, in which process he may call to his aid other lists and records for the purpose of comparison of properties and also may gain additional information by inquiry and personal observation. Sections 9778 and 9780 provide that he shall make up his assessor's book and include therein a complete list of all property, arranging in one part of the book what is denominated the "land list," which shall contain all the land by him assessed; and Section 9792 provides that *"the assessor shall value and assess all the property on the assessor's books according to its true value in money at the time of the assessment;"* and all other personal property shall be valued *at the cash price* thereof *at the time and place of listing the same* for taxation. Also the assessor is required to make out and return to the county court, by January second, a verified copy of his assessor's book (Sec. 9800); and the return of this book to the county clerk's office completes the assessment and terminates his jurisdiction. The principle is firmly established that in making assessment he acts in a judicial capacity. [State ex rel. Wyatt v. Hoyt, 123 Mo. 348, 27 S. W. 382.]

"Values" as the term is used in said section, are the *valuations* of the officials whose duty it is to make them, and the requirement of the section is that the *assessor* assess the property at *his* estimate— *his* valuation. [State ex rel. Thompson v. Bethards (en banc), 320 Mo. 1. c. 1168, 9 S. W. (2d) 603.]

The leading cases cited and relied on by the respondent will next be considered:

State ex rel. Dobbins v. Reed and Sutton, 159 Mo. 77, 60 S. W. 70, was an action on an assessor's bond based upon the assessor's

alleged wrongful and unlawful assessment of certain lands of Dobbins of which assessment he had no actual notice until after he had paid the taxes. The assessor, Reed, had fixed and carried into his land book a higher valuation on the land than the value fixed by plaintiff. The case turned on the question whether or not the assessor was bound by the value of the land as given on plaintiff's assessment return or list. Reed, when swearing Dobbins, said he could not assess the land at a lower assessment than that of the previous year. As appears from what has just been stated, the factual situation is very like the one before us. The case turned on the question whether the assessor was bound by the value of the land as fixed by Dobbins. Opinion delivered in Division Two was, upon a rehearing by the Court en Banc, adopted by the majority; SHERWOOD and MARSHALL, JJ., dissenting. The court decided that the assessor is not required to accept the valuation which the taxpayer may fix and swear to; that the assessor is required by statute to value and assess land after the tracts have been copied into the book known as the "land list;" that no wrong is done then placing a different and higher value on the lands than that given in the taxpayer's list or return; and that said book, when made out and filed with the county clerk, imports notice to every taxpayer of the valuation the assessor has fixed on his land. The court with particularity considered the pertinent statutes (the same then as now as regards valuations, listing and assessment), but made mention of no authorities. It should be noted, however, that of all the cases above reviewed, those then extant, and many other authorities, were cited in the briefs of counsel which are annexed to the opinion as printed in the official volume, 159 Mo.

The much later case of State ex rel. Teare v. Dungan, 265 Mo. 353, l. c. 367, 177 S. W. 604, approves the Reed and Sutton case and the intermediate cases which follow the latter (State ex rel. v. Carr (en banc), 178 Mo. l. c. 233, 77 S. W. 543, and State ex rel. v. Casey, 210 Mo. l. c. 252-3, 109 S. W. 1), and these others reiterate the pronouncements of the Reed and Sutton case. It may be well to note that the Dungan and Reed and Sutton cases state that as assessment lists were *not* required to be filed in the county clerk's office, and the assessor's land book was required to be so filed, the latter gave constructive notice of its contents. Present statutes, however, require the lists to be so filed and preserved, and the present view, as shown by the greater weight of authority, including the banc case of Ford Motor Co. v. Gehner, supra, is that the property owner is entitled to rely upon the assessment being made in accordance with his listed valuation, unless and until he has knowledge or information or is notified to the contrary by the assessing officials. Nonetheless, "the assessor" as stated by the Court en Banc in the Carr case, supra, l. c. 237: "is guided, not alone by the list returned by the taxpayer, but that he also takes into consideration

the assessment books of the previous years,'' and other proper matter. However, we regard it as established by the late decision in the Ford Motor Company case, en banc, that a taxpayer is entitled to notice in some form other than the mere filing of the assessment roll, before he can be made to pay a subsequently changed valuation.

On this phase of the case our conclusion may be well expressed by adopting the following language' found in 61 Corpus Juris, section 768, title Taxation: ''Where the owner gives a list of his property to the assessor, the proceeding to assess taxes against the property is commenced or initiated, and the taxing officials acquire jurisdiction. However, while a listing by the owner is the first step in the making of the assessment, it is only the first step, and is not the assessment itself. . . . A benefit secured by a taxpayer who returns a statement is the privilege of disputing the amount of the assessment if it exceeds his own valuation.''

The question of jurisdiction is, therefore, narrowed to the question of whether the action taken by the assessor was in excess of his jurisdiction. Save in that regard, the appellants concede the validity of the assessment. In such situation the assessment judgment is not void and is, as to any excess, voidable only. The remaining point for consideration is upon the assessor's performance of his duty.

With respect to that matter we are required to proceed on the rebuttable presumption that as a public officer, he properly discharged his duty, fairly and in good faith—not arbitrarily; and this presumption can be overcome only by clear and explicit testimony. [3 Cooley on Taxation (4 Ed.), sec. 1073.] Are we provided with testimony of that character? The chancellor with the witnesses before him, thought not. So do we. Mr. Wymore put his own construction upon the transaction in list making; he did not undertake to give the conversation, or any part of it. Nor did he deny that part of the testimony given in detail by the assessor. It seems a fair inference that Mr. Wymore had for several preceding years listed the property, or permitted the assessor to value it, at the figures ultimately placed on it by the assessor in this instance, though not without making complaint. It may be assumed that as the statute directs, the assessor called upon him in the previous years in the customary way. But in this instance Mr. Wymore—not at all improperly—sought the assessor (whether on the advice of counsel, it does not appear) with a view to binding him to lower valuations; as otherwise he could himself have listed the property at any valuation he saw fit, without let or hindrance on the part of the assessor. The assessor, holding a different view regarding values, and unwilling to be bound, made a substantial protest. (Note: This case, in this feature of protest, is markedly different from the Spencer case.) Moreover, it does not appear that the assessor had any personal interest to subserve, but was under duty to serve the public interest.

56

This latter he undertook to do, though less plainly and unequivocally than he should have done. Yet on the whole we are not persuaded that his conduct either in that matter, or in recording the higher valuations in the assessment roll, was arbitrary. Nor have appellants pleaded or shown any resulting injury.

We are of the opinion the case was correctly decided below. Accordingly the degree of the circuit court is affirmed. All concur.