CREST COMMUNICATIONS, Appellant,

v.

Harold KUEHLE, et al., Respondents.

No. 69813.

Supreme Court of Missouri,
En Banc.

July 26, 1988.

R. Michael Howard, Larry H. Ferrell, Warren L. Wells, City Atty., Cape Girardeau, Paul Roger Ellis, Jackson, for respondents.

J. Kent Lowry, Hallie H. Gibbs, II, Jefferson City, for appellant.

RENDLEN, Judge.

Plaintiff, Crest Communications, appeals the trial court's dismissal of its petition seeking to recover from the defendant collectors of revenue taxes "mistakenly or erroneously paid" under the terms of § 139.031.5.[1] This appeal involves the construction of a revenue law and jurisdiction is in this Court. Mo. Const. art. V, § 3. We reverse and remand.

On review of dismissal of a petition, our duty is to determine if the facts pleaded and reasonable inferences to be drawn from the allegations, when viewed in the light most favorable to plaintiffs, demonstrate any basis for relief. We accept as true all facts averred in the petition, construe all averments liberally and favorably to the plaintiff and determine whether they invoke principles of substantive law upon which relief may be granted. *Jacobs v. Jacobs*, 272 S.W.2d 185, 188 (Mo.1954); *San Luis Trails Association v. E.M. Harris Building Co.*, 706 S.W.2d 65, 67 (Mo. App.1986).

So viewed, the petition recites that plaintiff operates a cable television business in Cape Girardeau and Jackson, Missouri, and for the tax year beginning January 1, 1985, filed its property list declaring taxable real and tangible personal property of $309,577.

---

1. All statutory references are to RSMo 1986 unless otherwise indicated.

The assessor of Cape Girardeau County subsequently issued a notice of increase asserting an assessed value of $1,148,930. Understandably dissatisfied with the assessor's conclusion, plaintiff initiated a timely review by the county board of equalization, and when no relief was afforded there, appealed to the state tax commission. While in the midst of this administrative review process, plaintiff paid the 1985 taxes under protest and filed its property assessment list for 1986, computing its taxable property in the same manner as the previous year and declaring a value of $278,028. This time plaintiff received no notice of increase from the county assessor; however, on or before December 31, 1986, it "mistakenly or erroneously" paid the 1986 tax liability shown on its tax bill and calculated on an assessed valuation of $1,148,930 without indicating such taxes were paid under protest. On January 23, 1987, the state tax commission issued its decision reducing plaintiff's total assessed valuation for 1985 from $1,148,930 to $519,265 [2], and on March 16 plaintiff made written application for refund of that portion of its 1986 taxes calculated on the increased valuation added by the assessor. The county collector denied plaintiff's application for refund and this action against the Cape Girardeau County Collector and the collectors of the cities of Jackson and Cape Girardeau followed, by which plaintiff seeks recovery pursuant to § 139.031.5 of all 1986 taxes paid beyond that due on the self-assessed value of $278,028. Defendants filed motions to dismiss, asserting that the taxes in question were neither mistakenly nor erroneously paid within the meaning of § 139.031.5 and that plaintiff was precluded from seeking other relief by its failure to pay the taxes under protest. The city collectors of Jackson and Cape Girardeau further asserted the statutes in question authorize relief only against county collectors. The trial court sustained defendants' motions to dismiss with prejudice.

We are initially confronted with the question of whether the property valuation shown on the 1986 tax bill constituted an increase, notice of which must be given to the taxpayer under § 137.180. That section provides:

**137.180. Valuation increased—assessor to notify owner—appeals to county board of equalization.**—*Whenever any assessor shall increase the valuation of any real property he shall forthwith notify the record owner of such increase,* either in person, or by mail directed to the last known address; every such increase in assessed value made by the assessor shall be subject to review by the county board of equalization whereat the *landowner shall be entitled to be heard, and the notice to the landowner shall so state.*

(Emphasis added.)

Defendants contend that no notice of increase was required in this case because "the assessed valuation was the same as that for the previous year, 1985." However, that argument ignores the importance of a taxpayer's responsibilities and the assessor's statutory duties under §§ 137.115, 137.120, and 137.155. Under those sections, the assessor is to require the taxpayer "make a correct statement of all taxable real property" located in the county and owned by, or under the care or management of, the taxpayer, as well as "all taxable tangible personal property," § 137.115, and the taxpayer must list, among other items, all of his real estate *"and its value,"* § 137.120. The list of property must be sworn to under oath, § 137.155, and making a false or fraudulent list subjects the taxpayer to "double assessment" as well as penalties for perjury. § 137.285. A taxpayer's failure to deliver the required list results in "double assessment" of property which should have been listed, and a $50 penalty is imposed on the assessor if he "neglects" or "refuses" to assess the penalty against the taxpayer, with the caveat "the assessor may omit assessing the penalty in any case where he

**2.** The date of the tax commission decision is supplied by defendants in their motion to dismiss; it does not appear in the petition.

is satisfied the neglect is unavoidable and not willful."

It is against this background that we examine the notice provision of § 137.180. Prior to the adoption of that section, it had been held that "the property owner is entitled to rely upon the assessment being made in accordance with his listed valuation, unless and until he has knowledge or information or is notified to the contrary by the assessing officials[,]" and "a taxpayer is entitled to notice in some form other than the mere filing of the assessment roll, before he can be made to pay a subsequently changed valuation." *Wymore v. Markway*, 89 S.W.2d 9, 14 (Mo.1935). Given the continued importance of the taxpayer's listed valuation under the current statutory scheme and the notice rule existing at the time of § 137.180's adoption, illustrated by *Wymore*, the "increase" referred to in the statute necessarily means an increase above the valuation contained in the taxpayer's property list for the pertinent tax year. *See Mo. Atty. Gen. Op. No. 18* (February 28, 1957). Defendants' argument that there can be no "increase" in valuation when the assessor assesses the property at the same valuation as the prior tax year ignores the role of the taxpayer's property list and the rationale underlying § 137.180's notice requirement. The taxpayer is not to be charged with knowledge that the assessor will reject the valuation contained on the property list, sworn to under oath and declared pursuant to statutory mandate, simply because it differs from the valuation placed on the property for the preceding year. The taxpayer is entitled to rely on the valuation contained in his property list until he receives notice that it has been rejected by the assessor. *Wymore*, 89 S.W.2d at 14.

Our conclusion is further supported by cases considering the effect of an assessor's failure to provide the taxpayer with notice of increased valuation. In *John Calvin Manor, Inc. v. Aylward*, 517 S.W.2d 59, 62 (Mo.1974), this Court stated: "It is apparent that the failure to give the notice required by § 137.180 completely frustrates the statutory scheme at the very outset. Without this notice to the taxpay-

er, the taxpayer remains ignorant of the increased valuation put upon the taxable property and consequently does not have the opportunity to appeal to the board of equalization during the limited period allowed for such appeals." The question presented in *John Calvin Manor* was whether a suit for injunction to prevent the collection of taxes in excess of that due on the valuation submitted by the taxpayer, when the assessor fails to notify the taxpayer of any increase in valuation, is still viable after the enactment of § 139.031's protest procedure. The Court concluded:

It does not appear ... that the legislature intended to abrogate those remedies existing prior to the enactment of sec. 139.031 nor to make the procedure set forth in sec. 139.031 the exclusive remedy available to a taxpayer. Had the legislature intended to make the procedure set forth in sec. 139.031 the exclusive remedy, we would be confronted with a serious due process claim in cases such as the instant one, where the taxpayer, having been deprived of the statutory notice of the increased assessed valuation and thereby totally deprived of a hearing before the board of equalization and all of his administrative remedies, would have to pay a very substantial sum in order to even question the legality of the assessment.

*Id.* at 63. The Court further stated "[w]here, as here, the failure to give notice of the increased assessment prevents the taxpayer from pursuing his administrative remedies, the increased assessment made by the assessor is void and, consequently, so is the tax computed thereon...." *Id.* at 65.

Subsequently, in *B & D Investment Co., Inc. v. Schneider*, 646 S.W.2d 759 (Mo. banc. 1983), the Court was confronted with a situation in which a taxpayer filed an equitable action to obtain a refund of taxes paid without protest for the years 1976 through 1979, asserting that the assessor improperly increased the assessed valuation in 1976 without sending notice. The Court distinguished the injunction sought in *John Calvin Manor* from the refund

action before it and concluded "[i]n the circumstances of this case, the remedy under § 139.031 provided the taxpayer a fair and adequate remedy as contrasted with the so-called common law action. It is implicit in the decisions of this Court ... that under such circumstances, the taxpayer's remedy under § 139.031(1) was exclusive." *Id.* at 763. The Court also noted that the "term 'void' bears many meanings depending upon the context within which it is used." The Court cited *John Calvin Manor* as an example of a situation where an increased assessment is void, but observed that "under circumstances similar to this case, it has been expressly declared that the assessment is voidable but not void. *Wymore v. Markway,* 338 Mo. 46, 89 S.W. 2d 9 (1935)." However, the court found it unnecessary "to further characterize the increased assessment involved in this case." *Id.* at 764.

Defendants rely heavily on *B & D Investment* in support of their contention that plaintiff was limited to the protest procedure established by § 139.031 and plaintiff's failure to pay the taxes under protest is fatal to its cause of action. It is evident from the portions of the *B & D Investment* opinion quoted above that that decision was limited to the circumstances involved there, which differ in crucial respects from the facts presented in the case at bar, including the type of relief sought. Defendants' contention that all equitable remedies were abrogated by the enactment of § 139.031 is contrary to *John Calvin Manor* and based upon an incorrectly expansive reading of *B & D Investment;* nonetheless, accepting that premise for the sake of argument, the plaintiff here was not seeking an equitable remedy but was proceeding under § 139.031.5. *B & D Investment* does not bar the statutory action in question; indeed, it implicitly recognized its procedural viability although concluding the taxpayer there had failed to properly present that theory of recovery. 646 S.W.2d at 764–5. Hence plaintiff's failure to protest the taxes in question does not prevent it from seeking a refund of taxes "mistakenly or erroneously paid."

That being the case, we next consider whether plaintiff has alleged facts establishing that it "mistakenly or erroneously" paid taxes within the meaning of § 139.031.5. We are, of course, guided by well known rules of statutory construction and interpretation. It is our primary responsibility when construing statutes to ascertain and effectuate the intent of the General Assembly, and in so doing we look first to the language of the statute and the plain and ordinary meaning of the words employed. *Community Federal Savings & Loan Association v. Director of Revenue,* 752 S.W.2d 794, 798 (Mo. banc 1988). Provisions of the entire legislative act must be construed together and harmonized, if reasonably possible. *Id.*

There is a paucity of case law to assist us in our inquiry, although the parameters of the section's scope have perhaps been vaguely defined. In *State ex rel. Council Apartments, Inc. v. Leachman,* 603 S.W. 2d 930 (Mo.1980), the taxpayer sought a refund of taxes pursuant to § 139.031, contending that because it was entitled to a charitable exemption in 1978 and the use of the property had been the same in 1977, its payment of taxes on the property in 1977 was "mistaken or erroneous." We rejected that argument, noting:

> Until relator met its burden of establishing that its property was entitled to an exempt status, the assessment of ad valorem taxes against the property was proper and lawful, and payment of the tax was required. The payment without protest of a tax lawfully and properly assessed cannot be erroneous or the result of a mistake within the meaning of § 139.031.4 [, RMSo 1978].[3]

*Id.* at 931. In a concurring opinion in *State ex rel. Crawford County v. Bouse,* 586 S.W.2d 61 (Mo.App. banc 1979), Judge Maus noted *Mo. Atty. Gen. Op. No. 97* (February 10, 1970), which indicated that § 139.031(5) is "applicable to errors or mistakes such as double payment of the same

---

3. Section 139.031.4, RSMo 1978, is the predecessor of § 139.031.5, RSMo 1986.

tax." 586 S.W.2d at 67. It was also observed that § 136.035, a similar provision concerning taxes collected by the state, has, at least implicitly, been found applicable to the director of revenue's "refund of allegedly invalid registration fees intentionally paid."[4] *Id.* at 67 (citing *Ellsworth Freight Lines v. Mo. Hwy. Recip.*, 568 S.W.2d 521 (Mo. banc 1978); *State ex rel. Brady Motor, Inc. v. State Tax Com'n.*, 517 S.W.2d 133 (Mo.1974)). This Court recently concluded that "[a] reasonable construction of the terms 'overpayment' and 'erroneous' as used in section 136.035 includes the term 'illegal' as seen from other interpretations by this Court, the plain meaning of the language and the definition in Black's Law Dictionary." *Community Federal Savings & Loan Association v. Director of Revenue*, 752 S.W.2d at 798.[5]

■ As is obvious from the previous discussion of the effect of an assessor's failure to provide the taxpayer with notice of increased valuation, an increase without notice is invalid, and payment of such an increase by the taxpayer falls within the plain meaning and scope of taxes "mistakenly or erroneously paid" in the context of § 139.031, at least in a case in which the public authorities are well aware of the disagreement with the taxpayer over valuation, as indicated here by the 1985 valuation litigation. Like the taxpayer who makes a double payment of his tax bill, the plaintiff here has alleged payment of taxes not owed, and this situation is to be distinguished from the circumstances of *State ex rel. Council Apartments v. Leachman*, in which the taxpayer paid taxes "lawfully and properly assessed." 603 S.W.2d at 931.

This interpretation is consistent with the language and intent of the entire statutory

scheme discussed previously, and it does not thwart the public policy discouraging suits for the refund of taxes erroneously paid or illegally collected and favoring certainty in the collection of revenue. *See Community Federal Savings & Loan Association v. Director of Revenue*, 752 S.W.2d at 797. Not only does § 139.031.5 contain a one year limitation for bringing claims, but suits such as the one at bar can be avoided by the simple expedient of compliance with § 137.180's notice requirement.[6] The pertinent statutes reflect a scheme in which the interests of the government and taxpayers are balanced and in which duties and responsibilities are assigned to each. If in this case the scheme did not provide the government with all the revenue it anticipated and resulted in undesired litigation, it is because the county assessor failed to fulfill his statutory obligations. We believe plaintiff has sufficiently pled a cause of action pursuant to § 139.031.5.

■ Finally we consider the applicability of § 139.031.5 to the collectors of the cities of Cape Girardeau and Jackson, Missouri, who are among the named defendants. Those defendants are correct in noting that § 139.031.5, by its terms, applies to *county* collectors, and they argue plaintiff cannot rely on that statute to obtain a refund from the city collectors. However, article 10, section 11(a) of the Missouri Constitution provides:

> Taxes may be levied by counties and other political subdivisions on all property subject to their taxing power, but the assessed valuation therefor in such other political subdivisions shall not exceed the assessed valuation of the same property for state and county purposes.

---

4. There are some differences between the language used in § 136.035 and § 139.031. Section 136.035 refers to "overpayment or erroneous payment" of taxes.

5. Black's Law Dictionary defines "erroneous or illegal tax" as "[o]ne levied without statutory authority, or upon property not subject to taxation, or by some officer having no authority to levy the tax, or one which in some other similar respect is illegal." Black's Law Dictionary, p. 486, (5th ed. 1979).

6. We note also that under the terms of § 139.031, if successful in his litigation, a taxpayer may recover interest on taxes paid under protest, but may not obtain interest on taxes "mistakenly or erroneously paid." Thus there is a financial incentive for taxpayers to act promptly to recover taxes mistakenly or erroneously paid and to pay taxes under protest when a legal challenge is anticipated.

*See also Naegele Outdoor Advertising Co., Inc. v. Kansas City*, 509 S.W.2d 128 (Mo.1974). It is clear from *Naegele* that an equitable action for refund will lie in some cases to prevent a city from exceeding the assessed valuation placed on property by the county. Without attempting to assess the merits of plaintiff's action at this early stage, we hold that plaintiff has pled facts which, liberally construed, invoke principles of substantive law upon which relief may be granted.

The judgment of the trial court dismissing plaintiff's petition is reversed, and the cause is remanded.

BILLINGS, C.J., and BLACKMAR, WELLIVER and HIGGINS, JJ., concur.

ROBERTSON, J., concurs in result.

DONNELLY, J., dissents.